**DAIHATSU MOTOR CO., LTD.,**
Plaintiff–Appellee,

v.

**TERRAIN VEHICLES, INC.,**
Defendant–Appellant.

No. 92–2473.

United States Court of Appeals,
Seventh Circuit.

Argued March 2, 1993.

Decided Dec. 17, 1993.

Rehearing Denied Jan. 12, 1994.

Thomas Campbell (argued), Deborah H. Bornstein, Timothy G. McDermott, Gardner, Carton & Douglas, Chicago, IL, Claudia A. Carver, John H. Brinsley, Paul, Hastings, Janofsky & Walker, Los Angeles, CA, Ira Frazer, Daihatsu America, Los Alamitos, CA, for plaintiff-appellee.

Theodore A. Shapero, James A. Flesch (argued), Bruce C. Nelson, Rudnick & Wolfe, Chicago, IL, for defendant-appellant.

Before RIPPLE, KANNE, and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

This is an appeal by Terrain Vehicles, Inc. ("Terrain") from a judgment confirming a Japanese arbitral award in favor of Daihatsu Motor Co., Ltd. ("Daihatsu"). A Japanese arbitration tribunal issued the award to Daihatsu in January 1992. Daihatsu soon thereafter brought a confirmation action pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and its enabling statute, 9 U.S.C. §§ 201–08. The district court concluded that, because the two parties had agreed that any dispute was to be "finally settled" by arbitration, each party had consented to judicial confirmation of the arbitral award. As a result, the district court entered judgment for Daihatsu confirming the award. For the reasons that follow, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

Daihatsu is organized under Japanese law and is the manufacturer of the "Hi–Jet," an industrial vehicle used for such purposes as ground transport in airports and industrial plants, baggage handling, grounds keeping, and similar operations. Terrain is organized under Delaware law and, pursuant to a December 1983 Distributorship Agreement (the "Agreement"), was the exclusive distributor of the Hi–Jet for a fifteen-state territory in the southern part of the United States. The

Agreement provided for a three-year term, terminating on December 31, 1986, but included renewal provisions. On October 6, 1986, after learning that Daihatsu did not intend to renew the Agreement, Terrain filed a fourteen-count complaint against Daihatsu in the Circuit Court of Cook County, Illinois. Terrain based its complaint on breach of contract and various violations of state law. The complaint also named Mitsui & Co., Ltd., a Japanese corporation that exported the Hi-Jet from Japan to the United States, and Mitsui & Co. (USA), Inc. ("Mitsui USA"), a New York corporation that imported the Hi-Jet into the United States. Both were parties to the Agreement, as was another party the complaint named, Daihatsu America, Inc., Daihatsu's American subsidiary.

On November 7, Daihatsu removed Terrain's lawsuit on diversity grounds to the United States District Court for the Northern District of Illinois. The defendants then moved the district court to dismiss Terrain's complaint and to compel arbitration pursuant to Section 14(f) of the Agreement. Section 14(f) provides as follows:

*Arbitration*

Any dispute, controversy or difference which may arise among the parties hereto, out of or in relation to or in connection with this Agreement or for the breach thereof which cannot be settled amicably shall be *finally settled by arbitration.* If the defendant in such dispute, controversy or difference is the DISTRIBUTOR and/or IMPORTER, the arbitration shall take place at the American Arbitration Association in New York in accordance with the rules of procedure of the said Association, by which each party hereto shall be bound.

If the defendant in such dispute, controversy or difference is the MANUFAC-TURER and/or EXPORTER, the arbitration shall take place at the Japan Commercial Arbitration Association in Osaka in accordance with the Commercial Arbitration Rules of the said Association, by which each party hereto shall be bound [emphasis added].

On December 29, 1986, the district court dismissed Terrain's complaint and ordered the parties to arbitrate their disputes at the Japan Commercial Arbitration Association (the "JCAA"). Terrain had opposed the motion to compel. It maintained that, because Terrain named the importer, Mitsui USA, as a defendant in the complaint, the arbitration should have taken place in New York, not in Japan. Nonetheless, without taking an appeal from the judgment of the district court, Terrain submitted, in accordance with the district court's judgment, a May 28, 1987 letter to the JCAA requesting that it commence an arbitration proceeding between Terrain and Daihatsu.

The arbitration proceeded in Osaka, Japan over the following four and one-half years. Terrain sought damages of $7,636,028 for claims that had been the basis of Terrain's original lawsuit in Illinois state court. On January 23, 1992, the three-person arbitration panel issued its written decision. The panel concluded that Daihatsu's refusal to renew the Agreement was based on reasonable cause [1] and therefore dismissed all of Terrain's claims against Daihatsu.[2] The JCAA then deposited the award with the Osaka district court, at which time the award

---

**1.** For instance, the panel stated:

[W]e find that on the part of [Terrain] there existed a breach of an obligation to perform the minimum purchase requirements for the Vehicles, a failure to expand the dealer network, and low sales achievements with respect to the Vehicles. In this case, therefore, if [Daihatsu] had not decided to terminate or not to renew the Agreement, [Daihatsu], as a result of the grant to [Terrain] of an exclusive distributorship right with respect to the Vehicles, would have sustained serious disadvantages in that it could not sell its own products within the territory by itself or through a third distributor.

Arbitration Decision ("Arb. Dec."), JCAA Case No. 87–001 (Jan. 23, 1992), English Translation at 177.

**2.** The "Text of Award" stated as follows:

1. [Terrain's] claims shall be dismissed with prejudice.
2. Regarding the arbitration expenses, etc., the arbitration fees shall be borne by [Terrain], and the arbitration expenses and the remuneration for the Arbitrators shall be divided into two equal parts and borne by [Terrain] and [Daihatsu] equally.

Arb. Dec. at 4.

took on the effect of a final and binding judgment between the parties.[3]

### B. *Statutory Scheme*

At the outset, we set forth the relevant statutory scheme. As its title indicates, the Convention was implemented to promote the recognition of foreign arbitral awards throughout the world community. Article II(1) of the Convention provides that

> [e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship.

In *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court elaborated on the purpose of this Convention:

> The goal of the Convention, and the principle purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries.

*Id.* at 520 n. 15, 94 S.Ct. at 2457 n. 15 (citations omitted). To further this goal, the United States incorporated the Convention into Chapter 2 of Title 9, which also contains the Convention's enabling statute, 9 U.S.C. § 201–08.

Section 207 of the enabling statute states that

> [w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award against any other party to the arbitration.

Thus, § 207 provides for seemingly broad application of the Convention. However,

§ 208 addresses residual application of Chapter 1 of Title 9: "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that that chapter is not in conflict with this chapter or the Convention as ratified by the United States." Chapter 1 is the Federal Arbitration Act (the "FAA"). Thus, all provisions of the FAA, 9 U.S.C. §§ 1–16, apply to the Convention unless they conflict with the Convention or with its enabling statute.

Section 9 of the FAA contains two features that are arguably in conflict with § 207. It contains a "consent-to-confirmation clause" requirement and a one-year confirmation period. The text of § 9 provides in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award....

9 U.S.C. § 9. Against this background, we now turn to an examination of the proceedings in the district court.

### C. *District Court Proceedings*

On March 3, 1992, Daihatsu filed an action in the district court. It sought confirmation of the JCAA's arbitral award. In seeking this confirmation, Daihatsu relied upon Article III of the Convention, which calls on each signatory country to recognize arbitral awards of other signatory nations as binding and enforceable. The district court had jurisdiction pursuant to § 203 of the Convention's enabling statute, 9 U.S.C. §§ 201–08, which, along with § 207, vests district courts with the authority to confirm foreign arbitral awards.

Terrain moved for judgment in its favor on the pleadings. It asked the court to deny confirmation because the Agreement be-

---

**3.** In the interim between the district court's dismissal of Terrain's original complaint in December 1986 and the JCAA's entry of the arbitration award in January 1992, Terrain brought a separate action in California state court against Daihatsu America, Inc., Daihatsu's wholly-owned subsidiary, and two of its officers. Like Terrain's

original complaint filed in Illinois, the complaint in the California action was based on the nonrenewal of the Agreement. The state court stayed the action pending the arbitration; following the JCAA award and the district court's confirmation of that award in this case, the state court entered summary judgment in favor of the defendants.

tween the parties did not contain a provision for confirming the award. Terrain essentially argued that § 9 of the FAA applies to the Convention because it does not conflict with any provision in the Convention. As we have noted earlier, § 9 of the FAA states that a court may confirm an arbitral award only if the parties in their agreement have made it known that a confirmation judgment shall be entered upon an award (a "consent-to-confirmation clause"). Terrain submitted that, because no consent-to-confirmation clause existed in its Agreement with Daihatsu, the district court should not confirm the arbitral award. Thus, the issue before the district court was whether 9 U.S.C. § 207, with its broad confirmation language and three-year confirmation period, conflicted with § 9 with its consent-to-confirmation clause requirement and one-year confirmation period.

The district court concluded that § 9 applied, at least in part, to the Convention. Although the district court conceded that the respective time limit periods of each section were in conflict, it nevertheless concluded that § 9's consent-to-confirmation clause requirement did not conflict with § 207. The district court recognized that, by including this consent-to-confirm feature, § 9 provides an additional limitation that § 207 does not expressly incorporate. However, the court reasoned that § 9's requirement is necessary to prevent parties to nonbinding arbitration clause agreements from seeking confirmation of an arbitral award under the Convention.[4] It therefore concluded that § 9's consent-to-confirmation clause requirement applies to the Convention.

The district court then turned to whether the § 9 requirement it found to apply to the Convention was satisfied in the Agreement between Daihatsu and Terrain. The district court noted that this court had held that § 9 can be satisfied even if an agreement does not contain express consent-to-confirmation

language. Specifically, the district court pointed out that, in *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386, 389 (7th Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981), this court held that an agreement providing that the arbitration "shall be final and binding upon both parties" satisfied the consent-to-confirmation requirement of § 9. The district court therefore concluded that the language of the arbitration clause in the Agreement between Daihatsu and Terrain, which stated that any dispute "shall be finally settled by arbitration," also satisfied § 9's consent-to-confirmation clause requirement. Thus, because the parties intended confirmation of any arbitral award, the court entered judgment in favor of Daihatsu confirming the JCAA's award.

## II

## ANALYSIS

We are asked to review the district court's rulings with respect to both of the issues addressed in its decision: (1) whether § 9 of the FAA applies to the Convention and, if so, (2) whether the Agreement between Daihatsu and Terrain satisfies § 9's requirement of a consent-to-confirmation clause. Because each issue is one of law, our review is de novo. *See Rennie v. Dalton,* 3 F.3d 1100, 1106 (7th Cir.1993), *petition for cert. filed,* (Nov. 24, 1993) (No. 93–831).

We believe it is unnecessary to decide whether § 9 applies to the Convention. Because we agree with the district court's conclusion that the arbitration clause in the Agreement between the two parties constitutes a § 9 consent-to-confirmation clause, determining whether § 9 applies to the Convention would not alter the ultimate disposition of this case. Thus, we reserve the question of whether the convention conflicts with § 9 until a time when it must be answered.[5]

---

4. Daihatsu, which argued that § 9 does not apply to the Convention, submitted that the Convention already protected parties to nonbinding arbitration agreements. Article V(1)(e) of the Convention expressly provides that a party opposing recognition and enforcement of an award may raise the nonbinding nature of the award as a

defense in any proceeding arising under the Convention.

5. We note for emphasis that we neither approve nor disapprove of the district court's determination that § 9 applies to the Convention. We conclude only that, in light of our determination that the Agreement between the parties satisfies

To comply with § 9's consent-to-confirmation requirement, the Agreement must memorialize that the parties "have agreed that a judgment of the court shall be entered upon the award." 9 U.S.C. § 9. Daihatsu submits, and the district held, that the "finally settled" language in the Agreement's arbitration clause implies that the parties contemplated judicial confirmation of an arbitral award. Terrain, on the other hand, submits that such finality language alone is insufficient to constitute a consent-to-confirmation clause. Both argue that the caselaw supports their respective positions.

We begin with our previous decision in *Milwaukee Typographical.* The contract at issue in that case provided that any arbitration decision "shall be final and binding upon both parties." *Milwaukee Typographical,* 639 F.2d at 389. The court held that the finality language in the contract "was sufficient to imply consent to the entry of judgment on an arbitration award under § 9." *Id.* at 389–90.

Terrain suggests that, by relying on the finality language of the contract alone, *Milwaukee Typographical* ventured beyond the holdings of the cases upon which it relied and therefore is not a faithful interpretation of the consent-to-confirmation requirement of § 9. An examination of the principal cases relied upon by the *Milwaukee Typographical* court does indicate that they did not find it necessary to ground their holdings in the finality language alone. Rather, those cases looked not only to the finality language but to other factors that supported the conclusion that the parties intended to seek federal confirmation of the arbitration award, such as previous invocations of federal court juris-

diction, full participation in the arbitration, or agreed upon arbitration rules.

For instance, in *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 425 (2d Cir.1974), the court found an implicit consent-to-confirmation agreement. The agreement between the parties contained a clause providing that the decisions of the arbitrators "shall be final." Accordingly, the court stated that "[w]hatever final means, it at least expresses the intent of the parties that the issues joined and resolved in arbitration may not be tried de novo in any court, state or federal." *Id.* at 427. Nevertheless, the *I/S Stavborg* court expressly noted that, in addition to the finality language, it could rely upon the parties' willful participation in the arbitration and their invocation of federal jurisdiction to appoint an arbitrator and to vacate or modify the award. *Id.* at 427.[6] Similarly, the agreement in another Second Circuit case, *Kallen v. District 1119, National Union of Hospital Care Employees,* 574 F.2d 723 (2d Cir.1978), provided that the "award of an arbitrator hereunder shall be final, conclusive and binding." *Id.* at 724 n. 3. In light of this language and the fact that both parties had "participated fully in the arbitration process before the American Arbitration Association," the court held that the parties had "implicitly agree[d] that federal court intervention may be sought to compel compliance." *Id.* at 726. The Second Circuit cases, then, do note that their holdings can find support not only in the language of the arbitration clause, but also in the surrounding circumstances that evidenced the parties' intent to submit the arbitration award for confirmation in the federal court. We do not read those cases, however, as holding that

§ 9, any decision concerning whether § 9 applies to the convention would have no bearing on the disposition of this case: if § 9 applies to the Convention, the Agreement between Daihatsu and Terrain fulfills it; if § 9 does not apply, no consent-to-confirmation clause is needed to confirm the award. *See Audi NSU Auto Union Aktiengesellschaft v. Overseas Motors, Inc.,* 418 F.Supp. 982, 985 (E.D.Mich.1976) (stating that because "the arbitration clause in question does manifest consent to the judgment on the arbitral award by the parties, the court need not reach the issue[ ] ... whether the provisions of the Convention ... do away with the § 9 consent to judgment requirement").

6. *See also Booth v. Hume Publishing, Inc.,* 902 F.2d 925, 930 (11th Cir.1990) (holding that finality language in the parties' arbitration clause and the resisting party's full participation in the arbitration process is sufficient to allow judicial confirmation of award); *Pennsylvania Eng'g Corp. v. Islip Resource Recovery Agency,* 710 F.Supp. 456, 460–61 (E.D.N.Y.1989) (holding that finality language and the resisting party's invocation of federal jurisdiction constituted implicit agreement to confirmation); *Audi NSU Auto Union Aktiengesellschaft,* 418 F.Supp. 982, 985 (E.D.Mich. 1976) (same).

such corroborative evidence was a necessary component to a determination that the parties intended to be bound by the judgment of the federal court.[7]

In any event, even if we were inclined to limit our earlier holding in *Milwaukee Typographical*, and we are not so inclined, this case hardly presents an appropriate occasion for us to do so. The Agreement between Daihatsu and Terrain contains both finality language and corroborating evidence, some of it internal to the agreement, indicating that both parties contemplated judicial confirmation of any arbitral award. As we have already noted, the Agreement's arbitration clause states that any dispute which cannot be settled amicably "shall be finally settled by arbitration." Notably, the arbitration agreement also contains a choice of forum clause. It expressly provides that, if the defendant in any such dispute "is the DISTRIBUTOR and/or IMPORTER, the arbitration shall take place at the American Arbitration Association in New York in accordance with the rules of procedure of said Association, by which each party hereto shall be bound." This court made clear in *Commonwealth Edison v. Gulf Oil Corp.*, 541 F.2d 1263, 1273 (7th Cir.1976), that such language plainly indicates the parties' intent to have any arbitral award confirmed, and Terrain concedes as much.[8] Terrain discounts this evidence, however, because the arbitration proceeding at issue took place at the JCAA pursuant to the remainder of the choice of forum clause in the Agreement. The Agreement's arbitration clause also provides:

> If the defendant in such dispute ... is the MANUFACTURER and/or EXPORTER, the arbitration shall take place at the Japan Commercial Arbitration Association in Osaka in accordance with the Commercial Arbitration Rules of the said Association, by which each party hereto shall be bound.

Unlike the AAA rules, Terrain states, the JCAA rules do not expressly provide for confirmation.[9]

We cannot accept Terrain's argument. The language in the arbitration clause and the parties' conduct, when assessed in its totality, make clear that the parties contemplated judicial confirmation of an arbitral award regardless which party chose the forum. Terrain's view that this provision demonstrates that the parties intended that some, but not all, arbitral awards to be subject to judicial confirmation is highly improbable. Indeed, Terrain offers no plausible rationale for why the parties would have agreed to such an uneven approach to dispute resolution. There is simply no indication, either in terms of a bargain or other-

---

7. We are aware that, in *Stavborg*, Judge Oakes, writing for the court, explicitly reserved the question of whether the language of the contract, standing alone, was sufficient to confer jurisdiction on the court in an action to compel arbitration under 9 U.S.C. § 4. We do note that, later in the opinion, the court focused on the language of the contract and stated:

> Whatever "final" means, it at least expresses the intent of the parties that the issues joined and resolved in the arbitration may not be tried de novo in any court, state or federal.

*Stavborg*, 500 F.2d at 427. It later referred to the surrounding circumstances as removing any doubt that remained as to the intent of the parties. *Id.*

8. The arbitration agreement in *Commonwealth Edison* stated that arbitration proceedings would be conducted under the rules of the American Arbitration Association (the "AAA"). AAA Rule 46(c) on judicial confirmation provided: "Parties to these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any Federal or State Court having

jurisdiction thereof." *Commonwealth Edison*, 541 F.2d at 1273. Because the parties agreed to abide by AAA rules, the court held that they were "deemed to have consented to entry of judgment on any arbitration award, as required by 9 U.S.C. § 9." *Id.; see also Rainwater v. National Home Ins. Co.*, 944 F.2d 190, 193–94 (4th Cir.1991) (stating that "resort to AAA arbitration will be deemed both binding and subject to entry of judgment unless the parties expressly stipulate to the contrary"); *Paley Assoc. v. Universal Woolens, Inc.*, 446 F.Supp. 212, 214 (S.D.N.Y.1978) (stating that the holding of *Commonwealth Edison* is "now clearly the law").

9. Although the JCAA rules do not expressly provide for judicial confirmation of an arbitral award, Daihatsu correctly points out that Terrain engages in hyperbole in stating that "the JCAA rules do not at all allow for confirmation of an award." Appellant's Br. at 8. *See* Teruo Doi, *Japan, in* 2 International Handbook on Commercial Arbitration 25–26 (Albert Jan Van Den Berg, ed., 1984 & Nov. 1986 Supp.) (discussing enforcement of arbitral awards under the Japan Code of Civil Procedure).

wise, that it was the parties' intention to have an award confirmed if the distributor or the importer was the defendant, but not if the manufacturer or the exporter was the defendant. Moreover, just as there is no evidence that the parties intended such a disparity in each party's ability to confirm an arbitral award, there is no indication that the parties contemplated relying upon the rules of recognition and enforcement of foreign judgments enforcing an award. Terrain suggests that Daihatsu's only recourse consists of seeking a Japanese judgment and then enforcing it under the American recognition and enforcement of foreign country judgment rules; however, Terrain offers no basis for concluding that such a process would lead to a result other than the one reached by the district court through the enforcement of the arbitration award.

Moreover, we note that Terrain's own conduct of this litigation reflects that it recognized that any arbitration award was subject to judicial enforcement. For instance, after Terrain's state court action was removed to federal district court, Daihatsu and the Mitsui entities moved to compel arbitration pursuant to the Agreement. Terrain opposed the motion to compel. Its primary position was that commitment of the dispute to arbitration in any forum was not required by the contract. Its alternate position was that, if arbitration were required, arbitration before the JCAA was improper and that, if any arbitration were to be ordered, it ought to be in New York. Any arbitration in New York would have been conducted under the rules of the AAA. As the AAA rules and the caselaw indicate, any resulting arbitral award would have been subject to judicial confirmation. In short, Terrain, while preferring no arbitration at all, preferred to have any arbitration proceeding that would take place be held in New York at the AAA.[10] The district court rejected Terrain's position, and ordered that arbitration proceed at the JCAA.[11] Although explicitly invited to do so by the district court, Terrain did not appeal the dismissal of its lawsuit. Rather, it accepted the court's direction that the matter be submitted to arbitration in Japan.[12]

In short, Daihatsu and Terrain agreed that any given dispute that arose between them would be "finally settled" by arbitration.

**10.** *Cf. Kallen v. District 1199, Nat'l Union of Hosp. & Health Care Employees,* 574 F.2d 723, 726 (7th Cir.1978) ("[A]nd finally, while it is true that the Employer has resisted enforcement of the award, it nevertheless participated fully in the arbitration process before the American Arbitration Association").

**11.** Terrain took the position that the New York arbitrators would be better able to resolve the controversy than the arbitrators in Japan. The district court noted, however, that the choice of law clause in the contract called for application of Japanese law and that the Supreme Court had made clear that it would not indulge in the presumption that the Japanese arbitrators would not be competent, conscientious, and impartial in arbitrating a claim brought by a United States citizen. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 634, 105 S.Ct. 3346, 3357, 87 L.Ed.2d 444 (1985). The district court also rejected the argument that, because Mitsui, USA was a defendant, the matter ought to be arbitrated in New York. The court noted that this provision was for the protection of Mitsui, USA, and that that company had waived the right to rely on the clause by joining in the motion for arbitration in Japan. Moreover, the district court continued, the primary defendant in the dispute was Daihatsu, the company which had given Terrain notice of nonrenewal.

**12.** *Cf. Paley Assoc., Inc. v. Universal Woolens, Inc.,* 446 F.Supp. 212 (S.D.N.Y.1978). In *Paley Associates,* the agreement between the parties contained the following arbitration clause:

> Any controversy or claim in any wise arising from or relating to this contract or any modification thereof, or to the merchandise covered thereby, shall be submitted to and determined by arbitration in the City of New York, State of New York, in accordance with the laws of the State of New York and the rules then obtaining of the American Arbitration Association or the Mutual Adjustment Bureau of the Cloth & Garment Trades, as the party first referring the matter to arbitration shall elect.

*Id.* at 214. As in the case before us, the resisting party in *Paley Associates* submitted that, because there was no express § 9 consent-to-confirmation clause, the court could not confirm the arbitral award at issue. However, on the basis of this court's ruling in *Commonwealth Edison,* the district court held that the agreement to abide by AAA rules effectively constituted a § 9 consent-to-confirmation clause. The court apparently found no import in the fact that, because the arbitration clause provided a choice of arbitral forum, the arbitration need not necessarily have ended up subject to AAA rules.

Under our precedent, this language is sufficient to satisfy the consent-to-confirmation clause of § 9 (assuming *arguendo* that it is applicable in a case under the Convention). Terrain also was aware that an award could be subject to the rules of the AAA. Indeed, Terrain itself had taken the position that the dispute at issue should have been submitted to the AAA and should have been subject to AAA rules rather than submitted to the Japanese arbitration tribunal. Under these circumstances, we must conclude that the language of the Agreement and the conduct of the parties evidences the parties' intent that any arbitral award be subject to judicial confirmation.

Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.