**HARTFORD ACCIDENT & INDEM. CO., et al., Plaintiffs,**

v.

**EQUITAS REINSURANCE LTD., et al., Defendants.**

**No. Civ. 3:01CV99(AVC).**

United States District Court, D. Connecticut.

March 1, 2002.

Stuart D. Rosen, Stewart Edward Newman, Bingham Dana, Hartford, CT, for Plaintiffs.

Richard C. Mahoney, Kenny, Brimmer, Melly & Mahoney, Hartford, CT, Joseph L. Ruby, Baach, Robinson & Lewis, Wash-

ington, DC, Dale T. Miller, Lord Bissell & Brook, Chicago, IL, Thomas P. Cella, John Stephen Papa, Howard, Kohn, Sprague & Fitzgerald, Hartford, CT, for Defendants.

## RULING ON THE DEFENDANTS' MOTION TO DISMISS

COVELLO, Chief Judge.

This is an action for a declaratory judgment and damages in connection with a series of reinsurance contracts. It is brought pursuant to 9 U.S.C. § 201,[1] 28 U.S.C. § 2201,[2] and common law tenets concerning breach of contract. The plaintiffs are various insurance companies who are reinsured by the defendants through a series of contracts. The plaintiffs seek an order compelling a specific group of the defendants to arbitrate disputed issues arising out of the reinsurance contracts. To the extent that any of the defendants are not obligated to arbitrate, the plaintiffs seek damages for breach of the reinsurance contracts and a declaration of the defendants' obligations to indemnify the plaintiffs under the reinsurance contracts.

The defendants, certain Lloyd's Underwriters, now move to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

The issues presented are: (1) whether a petition to compel arbitration, brought pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, must allege that the adverse party has failed, neglected or refused to arbitrate; and (2) whether the plaintiffs have sufficiently alleged that the defendants failed, neglected or refused to arbitrate.

The court concludes that: (1) a petition to compel arbitration must allege that the adverse party has failed, neglected or refused to arbitrate; and (2) the plaintiffs have not sufficiently alleged that any of the defendants failed, neglected or refused to arbitrate.

For the reasons set forth herein, the motion to dismiss is granted.

### FACTS

Examination of the complaint discloses the following relevant facts:

The plaintiffs are fourteen insurance providers[3] located throughout the United States and Canada. The plaintiff, Hartford Accident & Indem. Co., appears in this action for itself and as agent of the

---

1. Title 9 of the United States Code, section 201 *et seq.* contains the provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, TIAS 6997, 330 U.N.T.S. 38 (1970). Section 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. Section 206 states that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for[.]" 9 U.S.C. § 206.

2. Title 28 of the United States Code, section 2201, provides in relevant part: "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

3. The plaintiffs are: Hartford Accident & Indem. Co., Hartford Fire Ins. Co., Hartford Cas. Ins. Co., Twin City Fire Ins. Co., Hartford Underwriters Ins. Co., Pacific Ins. Co., Hartford Ins. Co. of Canada, Sentinel Ins. Co., Hartford Ins. Co., Hartford Ins. Co. of the Southeast, Hartford Lloyd's Ins. Co., Nutmeg Ins. Co., Hartford Ins. Co. of Illinois, and Trumbull Ins. Co.

other plaintiffs. The plaintiffs are referred to herein collectively as "Hartford."

The complaint alleges that the defendants, certain underwriters at Lloyd's, London (the "Lloyd's Underwriters"), "are each individuals residing abroad or in the United States that have done or are doing business in the London insurance market through various insurance and reinsurance syndicates." The complaint further alleges that the defendants, Equitas Reinsurance Ltd., Equitas Ltd., Equitas Management Servs. Ltd., Equitas Holdings Ltd., and Equitas Policyholders Trustee Ltd. (collectively, "Equitas") "are entities organized under the laws of England with their principal place of business in London, England."

The plaintiffs are reinsured under a series of contracts, known as the "reinsurance program contracts," for the period between 1924 and 1983.[4] These contracts are "intended to provide a uniform program of excess of loss reinsurance coverage in various layers over a number of years." The series of contracts which reinsure the plaintiffs are known as the "blanket casualty treaty program."

In the 1950s, Lloyd's Underwriters began reinsuring Hartford under one or more of the reinsurance program contracts in the second and higher layers of the blanket casualty treaty program.

In 1976, language was added to the reinsurance program contracts to require arbitration if "any dispute shall arise between [Hartford] and [Lloyd's Underwriters] with reference to the interpretation of this Agreement or their rights with respect to any transaction involved . . . ."

In September of 1996, the defendant, Equitas, purportedly assumed the contractual obligations and responsibilities of Lloyd's Underwriters for handling claims and payments under the reinsurance program contracts. The complaint alleges that "Equitas is in possession of and controls documents relevant to this [litigation], controls the claims handling and funds available to pay obligations owed to [the plaintiffs], directly pays reinsurance claims and controls counsel representing the Lloyd's Underwriters."

The complaint alleges that Hartford has submitted to Equitas and certain Lloyd's Underwriters (the "billed defendants") reinsurance claims, pursuant to the reinsurance program contracts, in excess of $33.5 million and that these defendants have failed to pay these outstanding claims. The complaint further alleges that these billed defendants have refused to pay these outstanding claims because of a disagreement as to the billing method used by Hartford to allocate payments among its reinsurers over multiple years.

On January 19, 2001, the plaintiffs initiated this action. The amended complaint asserts that the court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.[5] On May 24, 2001, Hartford sent a letter to a subset of the billed defendants, the group of reinsurers for contracts entered into after 1976, "including Equitas and the 1976 and later year Lloyd's Underwriters" (the "arbitration defendants"). The letter demanded arbitration for disputes arising out of the reinsurance program contracts signed on or after January 1, 1976. The letter requested that the arbitration defen-

---

4. "Reinsurance" is a transaction, pursuant to a contract, where an insurer transfers to another insurer, known as the reinsurer, a portion of the ceding insurer's liabilities under its insurance policies.

5. Title 28, section 1331, of the United States Code states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

dants "name their arbitrator within thirty days of the date of this demand."[6]

On June 8, 2001, the plaintiffs filed their amended complaint. The complaint alleges that "[a]lthough the time within which the [a]rbitration [d]efendants must respond to the arbitration demand has not yet expired, upon information and belief, one or more of the [a]rbitration [d]efendants do not intend to arbitrate, and will refuse to arbitrate, pursuant to Hartford's demand." (Amended Complaint, ¶ 46).

Count one of the complaint seeks an order compelling the arbitration defendants to arbitrate the dispute between the parties pursuant to the terms set forth in the plaintiffs' May 24, 2001 demand letter. In addition, count one seeks to stay this action as to the other defendants who are parties exclusively to reinsurance program contracts without arbitration agreements. In the alternative, count two of the complaint seeks damages against the billed defendants for breach of contract and count three seeks a declaratory judgment with respect to which billing method should be used by the plaintiffs to allocate payments among their reinsurers.

## STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) must be granted if a plaintiff has failed to establish subject matter jurisdiction. *Golden Hill Paugussett Tribe of Indians v. Weicker*, 839 F.Supp. 130, 136 (D.Conn.1993). Federal courts "are empowered to hear only those cases that (1) are within the judicial power of the United States, as defined by the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." 13 Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure § 3522 (1984). In analyzing a motion to dismiss under Rule 12(b)(1), the court must accept all well pleaded factual allegations as true and must draw reasonable inferences in favor of the plaintiff. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d.Cir.2001).

## DISCUSSION

### I. *PETITION TO COMPEL ARBITRATION*

The defendants, Lloyd's Underwriters, argue that the amended complaint should be dismissed because the court lacks subject matter jurisdiction over count one, "the only count that purports to present a federal question[.]" Specifically, the defendants argue that "Hartford was required to allege Underwriters' 'failure, neglect, or refusal' to arbitrate to invoke this court's original jurisdiction" under the "Convention Act," Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

In response, Hartford argues that the court may direct the parties to arbitration, "without requiring any finding of a 'failure, neglect or refusal' to arbitrate." Even if the court were to require such a finding, the plaintiffs argue that Lloyd's Underwriters "by their words and conduct, have made it perfectly clear that they will *not* arbitrate . . . ." (emphasis in original).

### A. *The Federal Arbitration Act*

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), is divided into three chapters: Chapter One, 9 U.S.C. §§ 1–16, are the General Provisions; Chapter Two, 9 U.S.C. §§ 201–208, implements the provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral

---

**6.** It appears that this deadline has been extended by agreement of the parties to an unknown date.

Awards, also known as the "New York Convention;"[7] and Chapter Three, 9 U.S.C. §§ 301–307, contains the provisions of the Inter–American Convention on International Commercial Arbitration.

This case involves both Chapter One, the General Provisions of the FAA, and Chapter Two, commonly referred to as the "Convention Act," as it incorporates the provisions of the New York Convention. The FAA's General Provisions, found in Chapter One, govern arbitration agreements between parties and transactions in the United States; the New York Convention and the Convention Act govern arbitration agreements involving foreign parties.

Section 203 of the Convention Act states that "[t]he district courts of the United States ... shall have original jurisdiction over such an action or proceedings [falling under the New York Convention], regardless of the amount in controversy." 9 U.S.C. § 203. The plaintiffs seek an order from this court directing the parties to arbitration, pursuant to Section 206 of the Convention Act. That section provides, in pertinent part, that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for...." 9 U.S.C. § 206; *see also* New York Convention, Article II(3) (stating that the court of a contracting state to the convention "shall, at the request of one of the parties, refer the parties to arbitration" when a valid arbitration agreement exists between the parties).

This court, however, is not to apply the Convention Act alone in proceedings involving arbitration disputes. Section 208 of the Convention Act specifically directs that Chapter One of the FAA, the General Provisions, "applies to actions and proceedings brought under [Convention Act] to the extent that the chapter is not in conflict with this chapter or the convention as ratified by the United States." 9 U.S.C. § 208. *See also Atlas Chartering Servs., Inc. v. World Trade Group, Inc.,* 453 F.Supp. 861, 863 (S.D.N.Y.1978) (applying Section 8 of Chapter One, the pre-arbitration attachment provisions, to an action under the Convention); *Evans & Sutherland Computer Corp. v. Thomson Training & Simulation Ltd.,* No. 94 Civ. 6795, 1994 WL 593808 at *3 (S.D.N.Y. Oct. 28, 1994) (applying Section 4 of Chapter One, 9 U.S.C. § 4, to a petition to compel arbitration under the Convention).

### B. *9 U.S.C. § 4*

■ Section 206 of the Convention Act states that a court having jurisdiction under the Convention Act "may direct that arbitration be held in accordance with the agreement[.]" 9 U.S.C. § 206. However, Section 4 of the General Provisions requires that a party seeking to compel arbitration be "aggrieved" before the court can direct arbitration. Section 4 provides in relevant part:

A party *aggrieved by the alleged failure, neglect, or refusal of another to arbitrate* under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement ... The court shall hear the parties, *and upon being satisfied that ... the failure to comply [with the arbitration agree-*

7. "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards was adopted at the conclusion of a United Nations conference which was held in New York in 1958. The United States implemented the Convention by enacting Chapter 2 of the Federal Arbitration Act, on July 31, 1970, Pub.L. 91–368, 84 Stat. 692[.]" *Bergesen v. Joseph Muller Corp.,* 548 F.Supp. 650, 652 (S.D.N.Y. 1982).

*ment] is not in issue,* the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (emphasis added). "Generally, consideration of a petition to compel [under Section 4] 'is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part.'" *Diemaco v. Colts Manuf. Co., Inc.,* 11 F.Supp.2d 228, 231 (D.Conn.1998) (quoting *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir. 1996)). Absent a refusal by the other party to arbitrate, "arbitration cannot be compelled under Section 4." *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 725 F.2d 192, 195 (2d Cir.1984).

As discussed above, Section 208 of the Convention Act states that "Chapter 1 applies to actions and proceedings brought under this chapter to the extent that the chapter is not in conflict with this chapter or the Convention ..." Thus, the court must determine whether the requirements of Section 4 conflict with the Convention Act or the New York Convention itself. Lloyd's Underwriters argues that there is no conflict between Section 4 and the Convention Act; on the other hand, Hartford argues that Section 4 does not apply to actions brought under the Convention Act because such a requirement "would throw additional (and unwarranted) roadblocks in the path of speedy adjudication of arbitral disputes, thus defeating the Convention's goal to "encourage the recognition and enforcement of commercial arbitration agreements...."

■ Section 4 requires that a party seeking to compel arbitration be "ag-

grieved" by the refusal of the adverse party to arbitrate before the aggrieved party may seek an order from the court compelling arbitration. On its face, this requirement is not in conflict with the Convention Act or the Convention itself. Article II(3) of the Convention requires that a court, "when seized of an action" where the parties have agreed to arbitrate, shall "refer the parties to arbitration...." Requiring a petitioner to allege that the adverse party has actually failed, neglected, or refused to arbitrate assures the court that there is, in fact, a dispute concerning whether the parties should arbitrate. If the adverse party has not refused to arbitrate, or will agree to arbitrate, there is no reason for court involvement in the first place.[8]

Moreover, the purposes behind the requirements of Section 4 are compatible with the Convention's goal of promoting speedy and efficient resolutions of arbitration disputes. The third circuit explained the purpose behind Section 4: "[U]nless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause ... no dispute over whether to arbitrate has arisen, and no harm has befallen the petitioner—hence, the petitioner cannot claim to be 'aggrieved' under the FAA." *PaineWebber, Inc. v. Faragalli,* 61 F.3d 1063, 1067 (3d Cir.1995).

■ At least one court, the southern district of New York, has concluded that Section 4 of the FAA applies to a petition to compel arbitration brought pursuant to the Convention Act such that the plaintiff must allege that the adverse party failed, neglected, or refused to arbitrate. *Evans & Sutherland Computer Corp. v. Thomson*

8. "[I]t is doubtful that a petition to compel filed before the 'adverse' party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance." *PaineWebber, Inc. v. Faragalli,* 61 F.3d 1063, 1067 (3d Cir.1995).

*Training & Simulation Ltd.*, No. 94 Civ. 6795, 1994 WL 593808 at * 4 (S.D.N.Y. Oct. 28, 1994). In addition, courts have concluded that the other provisions of Chapter One of the FAA apply to actions under the Convention Act. *See, e.g., Atlas Chartering Servs., Inc. v. World Trade Group, Inc.*, 453 F.Supp. 861, 863 (S.D.N.Y.1978) (concluding that the pre-arbitration attachment provisions of 9 U.S.C. § 8 apply in actions under the Convention Act); *Jain v. de Mere*, 51 F.3d 686, 691 (7th Cir.1995) (concluding that the provisions of Section 4 of the FAA which permit a court to order arbitration in its own district apply to actions under the Convention Act where the arbitration agreement does not specify a location). Hartford has not provided to the court, nor does the court's own research reveal, any authority which suggests that the requirements of Section 4 at issue in this case are in conflict with the Convention Act or the New York Convention itself.

The court concludes that the requirements of Section 4 at issue here are not in conflict with the Convention Act or the New York Convention; therefore, these requirements apply to this petition brought pursuant to 9 U.S.C. § 206.

### C. *Requirements of Section 4*

■ Lloyd's Underwriters argue that "[t]he [a]mended [c]omplaint does not assert that any of the [d]efendant Underwriters ... have failed to comply with their alleged agreement to arbitrate. To the contrary, it alleges that the time for them to accept or reject Hartford's arbitration demand has not yet arrived." In response, Hartford argues that its "allegations make clear that the Underwriters indeed have failed, neglected or refused to arbitrate."

It is undisputed that Hartford initiated this litigation before the time set by Hart-ford for the arbitration defendants to accept or reject Hartford's written request to arbitrate had expired. Paragraph 46 of the amended complaint states:

> Exhibit G attached hereto and incorporated herein is Hartford's May 24, 2001 demand for arbitration of such disputes ... Along with the other 1976 and later year Blanket Casualty Treaty Program reinsurers, the respondents to Hartford's demand include Equitas and the 1976 and later year Lloyd's Underwriters identified in Exhibit D (collectively, the "Arbitration Defendants"). *Although the time within which the Arbitration Defendants must respond to the arbitration demand has not yet expired,* upon information and belief, one or more of the Arbitration Defendants do not intend to arbitrate, and will refuse to arbitrate, pursuant to Hartford's demand.

(emphasis added). To support their arguments with respect to whether or not Hartford has met the requirements of Section 4, both parties cite to the third circuit's decision in *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir.1995). In *PaineWebber*, the court concluded that the requirements of Section 4 are met when a party "takes an unequivocal position that it will not arbitrate." *Id.* at 1067. The court concludes that there are no allegations that any of Lloyd's Underwriters have assumed such an "unequivocal position."

First, the court notes that the defendants still had an opportunity to accept or reject Hartford's demand to arbitrate before Hartford filed its amended complaint.

Next, there are no specific factual allegations to support the amended complaint's assertion that "one or more of the Arbitration Defendants do not intend to arbitrate." The amended complaint does not state that one or more of the defendants has expressly rejected arbitration,

but rather only suggests that one or more of the many defendants might not intend to arbitrate.[9]

Finally, the court notes that Exhibit D to the complaint, which lists the "Arbitration Defendants," consists of approximately 231 reinsurers, not all currently defendants, and includes over one-hundred of the Lloyd's Underwriters which are defendants. The amended complaint's assertion that "one or more of these" one-hundred or so defendants "do not intend to arbitrate" does not evince an "unequivocal position" on the part of any one of these defendants. As Lloyd's Underwriters note, the amended complaint's assertion "says nothing about any individual Underwriter[,]" and the "facts that one or even several unidentified Underwriters intend not to arbitrate with Hartford is not a basis for exercising jurisdiction over the remaining Underwriters."

The court therefore concludes that Hartford has not sufficiently alleged, pursuant to Section 4 of the FAA, that one or more of the arbitration defendants have failed, neglected, or refused to arbitrate. Hartford's petition to compel arbitration under the Convention is therefore denied without prejudice.

## II. *REMAINING CAUSES OF ACTION*

■ The sole basis alleged for the court's jurisdiction is based upon a federal question pursuant to 28 U.S.C. § 1331. Having concluded that it is without jurisdiction to hear the federal question before it, i.e., the petition to compel arbitration, the court is without supplemental jurisdiction over the remaining causes of action, as set forth in count two for breach of con-

tract, *see* 28 U.S.C. § 1367,[10] and count three for a declaratory judgment, *see* 28 U.S.C. § 2201(a); *see also Concerned Citizens of Cohocton Valley, Inc. v. New York State Dept of Envtl. Conservation,* 127 F.3d 201 206 (2d Cir.1997) ("[A] declaratory judgment action must ... have an independent basis for subject matter jurisdiction[.]"). The case is therefore dismissed in its entirety.

## CONCLUSION

The motion of the defendants, Lloyd's Underwriters, to dismiss (document no. 36) is GRANTED. The case is dismissed without prejudice.

---

9. It is not known at this time whether one or more of the arbitration defendants will actually refuse to arbitrate with Hartford.

10. The amended complaint does not allege, nor does it appear, that there is complete diversity of the parties, such that the court would have diversity jurisdiction over the state law cause of action.