PHOENIX AKTIENGESELLSCHAFT,
Petitioner–Appellee,

v.

ECOPLAS, INC. (formerly known as Plastek Corporation, formerly known as Plaslok Corporation), Respondent–Appellant.

No. 03–9000.

United States Court of Appeals,
Second Circuit.

Argued: May 28, 2004.

Decided: Dec. 10, 2004.

Alan J. Bozer, Phillips Lytle, LLP, Buffalo, New York, for Respondent–Appellant.

Kevin D. Szczepanski, Hodgson Russ LLP, Buffalo, New York, for Petitioner–Appellee.

Before: NEWMAN, CALABRESI and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Ecoplas, Inc. ("Ecoplas") appeals from a judgment entered in the United States District Court for the Western District of New York (Arcara, J.) granting a motion by Phoenix Aktiengesellschaft ("Phoenix") to confirm an arbitration award. Because 9 U.S.C. § 207 preempts the consent-to-confirmation requirement of 9 U.S.C. § 9 in cases brought pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 (the "Convention"), we reject Ecoplas's conten-

tion that the lack of consent to confirmation in the arbitration agreement provides a ground for reversal. We also reject Ecoplas's claim under Article V(1)(b) of the Convention that it was unable to present its case in arbitration and that the award therefore should not be enforced. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

The parties entered into a licensing agreement in December 1993 under which Phoenix, a German corporation, granted Ecoplas, an American corporation, an exclusive license to produce and sell "Phoenix polyester-(UP)-moulding compounds." Phoenix further agreed to provide Ecoplas with "secret technical knowledge as well as technical know-how relative to the manufacture" of those compounds. In exchange Ecoplas agreed to pay Phoenix royalties and an annual licensing fee.

The licensing agreement contained an arbitration clause, which provided in relevant part:

> The parties shall make a diligent effort to settle amicably all disagreements in conjunction with this contract. If an amicable agreement is not reached then the arbitration court of the International Chamber of Commerce in Zurich shall have jurisdiction at the exclusion of regular courts. This agreement is subject to Swiss law.

In August 1997, Phoenix informed Ecoplas that it had sold a business portfolio to Bakelite AG, a German company, and requested that Ecoplas agree to a transfer of the licensing contract to Bakelite AG as well. Ecoplas, in response, informed Phoenix that it would "not be continuing the license agreement with Bakelite AG, and it is being considered terminated." A dispute then arose over whether Ecoplas had terminated the agreement prematurely. Phoenix claimed that because Ecoplas refused to allow the license transfer, the original contract obligations between Phoenix and Ecoplas remained in place. Ecoplas maintained that the contract had been terminated in 1997 by mutual agreement. Ecoplas did not pay the license fees for 1997 and 1998.

On April 7, 1999, Phoenix filed a complaint with the International Court of Arbitration of the International Chamber of Commerce ("ICC"). Defending its failure to pay the fees, Ecoplas argued that Phoenix's sale of its business portfolio to Bakelite AG had dissolved the licensing agreement between Phoenix and Ecoplas, and that, in any event, Phoenix had failed to provide usable technical advice as required by the agreement.

The arbitrator rejected Ecoplas's contentions and rendered a decision in favor of Phoenix on December 15, 2000. He found that the sale of assets to Bakelite AG did not void the contractual relationship between Phoenix and Ecoplas, and that the licensing agreement did not require Phoenix to provide Ecoplas with more technical assistance than had already been provided. The arbitrator awarded Phoenix approximately $100,000, plus $5751 in arbitration costs and 40,000 Swiss Francs in legal fees.

Because Ecoplas failed to pay the arbitration award, Phoenix commenced an action seeking confirmation of the award in the Western District of New York pursuant to the Convention. In response, Ecoplas claimed that the federal district court lacked jurisdiction over Phoenix's action because the arbitration agreement did not reflect the parties' intent to consent to judicial confirmation of the arbitration award, as required by § 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, 201–08, 301–07 (2000). Citing Article

(V)(1)(b) of the Convention, Ecoplas further argued that the district court should not honor the arbitration award because the arbitrator had refused to hear certain evidence regarding the competency of the technical advice provided by Phoenix.

The district court adopted a recommendation from Magistrate Judge Hugh B. Scott that the court confirm the award. In doing so, the court observed that it remained an open question whether the consent-to-confirmation provision of § 9 had been preempted by § 207 for cases arising under the Convention. The court held, however, that even if the requirements of § 9 did apply, the licensing agreement complied with those requirements. The agreement, Judge Arcara wrote, "sufficiently demonstrates the parties' intent that the result of the ICC arbitration be final and binding, such that the claims would not be heard *de novo* in any court." By adopting the reasoning of Magistrate Judge Scott, Judge Arcara also implicitly rejected Ecoplas's Article V(1)(b) claim. Ecoplas appeals.

## DISCUSSION

This case presents an unresolved question related to the FAA. This statute, enacted originally in 1925,[1] aimed to " 'reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts.' " *Ermenegildo Zegna Corp. v. Zegna*, 133 F.3d 177, 180 (2d Cir.1998) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). To that end, the FAA's provisions " 'manifest[ed] a liberal federal policy favoring arbitration agreements.' " *Id.* (quoting *Gilmer*, 500 U.S. at 25, 111 S.Ct. 1647) (further internal quotation marks and cita-

tion omitted). In 1958, twenty-six of the forty-five nations participating in the United Nations Conference on Commercial Arbitration adopted the Convention To Recognize and Enforce Foreign Arbitration Awards. *See Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir.1974). Though the United States did not accede to the Convention in 1958, Congress implemented the Convention twelve years later by enacting Chapter 2 of the FAA, now codified at 9 U.S.C. §§ 201–208. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d Cir.2004); *Parsons & Whittemore*, 508 F.2d at 973. The Convention's purpose was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *see also Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Fed.*, 361 F.3d 676, 691 (2d Cir.2004) (Jacobs, J., concurring). Pursuant to 9 U.S.C. § 208, the pre-Convention provisions of the FAA—that is, the provisions of Chapter 1, 9 U.S.C. §§ 1–16—continue to apply to the enforcement of foreign arbitral awards except to the extent that Chapter 1 conflicts with the Convention or Chapter 2. *See Parsons & Whittemore*, 508 F.2d at 973.

The FAA provisions at issue here are those that grant federal courts the authority to confirm an arbitration award. *See* 9 U.S.C. §§ 9, 207. Chapter 2 of the FAA provides that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming

---

1. *See* Act of Feb. 12, 1925, ch. 213 § 1 et seq., 43 Stat. 883.

the award as against any other party to the arbitration." 9 U.S.C. § 207. The award confirmation provision in Chapter 1 of the FAA is more restrictive in that it requires prior consent to confirmation by both parties. Specifically, it provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award ....

9 U.S.C. § 9 (emphasis added). By including a consent-to-confirmation requirement, Congress aimed "to ensure that the parties have affirmatively agreed to the application of the federal substantive law contemplated by the [Federal Arbitration] Act to the interpretation of the arbitration agreement into which they have entered." *I/S Stavborg v. Nat'l Metal Converters, Inc.*, 500 F.2d 424, 426 (2d Cir.1974).

We review *de novo* legal issues in a district court's confirmation of an arbitral award. *See Pike v. Freeman,* 266 F.3d 78, 86 (2d Cir.2001) (citing *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir.1997)). Ecoplas urges us to reverse the district court on the ground that the arbitration agreement fails to conform to § 9's consent-to-confirmation requirement. As noted above, however, and as both parties acknowledge, conformity with that requirement is necessary only if § 9 is consistent with § 207. If the two provisions conflict, the latter provision preempts the former, *see* 9 U.S.C. § 208, and consent is unnecessary for confirmation.

Section 207 does not in any way condition confirmation on express or implicit consent. Because the plain language of § 207 authorizes confirmation of arbitration awards in cases where § 9's consent requirement expressly forbids such confirmation, we hold that the two provisions conflict. Accordingly, we hold that § 207 preempts § 9's consent-to-confirmation requirement in cases under the Convention.[2]

---

**2.** The district court ruled for Phoenix on the alternative ground that even if § 9's consent requirement applied, the arbitration clause satisfied the requirement. Though we need not discuss the issue in depth, we note that the language used in the Agreement, taken together with the parties' actions, provides some support for the district court's conclusion. Although the agreement contains no express consent provision, our cases have not required that consent be explicit in order to satisfy § 9. *See Kallen v. District 1199, Nat'l Union of Hosp. and Health Care Employees,* 574 F.2d 723, 724–26 & n. 1 (2d Cir.1978) (finding that § 9's consent-to-confirmation requirement was satisfied in light of parties' full participation in arbitration process before the American Arbitration Association and in light of the contract's provision that the "award of an arbitrator hereunder shall be final, conclusive and binding"); *I/S Stavborg,* 500 F.2d at 425–27 (2d Cir.1974) (holding that § 9's requirements were satisfied in light of arbitration clause's provision that the deci-

sions of the arbitrators "shall be final," the parties' willful participation in the arbitration, and their invocation of federal jurisdiction to appoint an arbitrator). It is potentially significant, however, that the award in the instant case was rendered by a foreign arbitral panel applying Swiss law, and not, as in *I/S Stavborg* and *Kallen,* by an arbitral panel in the United States applying federal law. *See Kallen,* 574 F.2d at 724–26; *I/S Stavborg,* 500 F.2d at 426–27. In *I/S Stavborg,* we noted that one purpose of the consent-to-confirmation requirement was "to ensure that the parties have affirmatively agreed to the application of the federal substantive law contemplated by the [Federal Arbitration] Act." *Id.* at 426. Thus, it is not entirely clear whether we would have reached the same decision in *I/S Stavborg* had the parties not at least consented to the application of federal law. *See also id.* at 427 ("Where, as here, the substantive law to be applied to interpretation of the contract itself is federal maritime law, it seems doubtful to us that either party

*See* 9 U.S.C. § 208. The only other circuit court to rule on this issue has reached the same conclusion. *See McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 120 F.3d 583, 588–89 & n. 12 (5th Cir. 1997).

Ecoplas argues that Chapters 1 and 2 have been found not to be in conflict where, as here, "the first results in limits being placed on the latter." The two cases upon which Ecoplas relies for this proposition, however, do not support Ecoplas's claim. In *Hartford Accident & Indemnity Co. v. Equitas Reins. Ltd.,* 200 F.Supp.2d 102 (D.Conn.2002), the district court analyzed 9 U.S.C. § 4, which requires that a party seeking to compel arbitration be "aggrieved" by the failure of the adverse party to arbitrate before the aggrieved party may seek a court order compelling arbitration. There, the plaintiff argued that § 4 conflicted with 9 U.S.C. § 206, which does not expressly require that a party be "aggrieved" but rather provides that a court having jurisdiction under the Convention "may direct that arbitration be held in accordance with the agreement." As Ecoplas notes, the *Hartford Accident* court rejected plaintiff's argument and found

that § 4's requirements were not in conflict with § 206. 200 F.Supp.2d at 107–08. In coming to that conclusion, however, the court observed that § 4 imposed no limits on jurisdiction beyond those already imposed by basic Article III principles of standing. "If the adverse party has not refused to arbitrate," the court found, "there is no reason for court involvement in the first place." *Id.* at 108; *see also id.* at 108 n. 8 (" '[I]t is doubtful that a petition to compel filed before the "adverse" party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance.' " (quoting *PaineWebber, Inc. v. Faragalli,* 61 F.3d 1063, 1067 (3d Cir.1995))). Because § 4 imposed no additional limits on a suit brought pursuant to § 206, no conflict existed between the two provisions. We cannot say the same of § 9, which would pose substantial limits on § 207 if the latter provision did not preempt the former provision.[3]

Ecoplas's reliance on *Atlas Chartering Services., Inc. v. World Trade Group, Inc.,* 453 F.Supp. 861 (S.D.N.Y.1978), is also unavailing. The plaintiff in *Atlas Chartering* contended that § 8 of Chapter 1,

was particularly concerned that an award might be enforced in federal court ...."). We also note that *Kallen* arose under federal labor law, *see* 574 F.2d at 725, and that *Stavborg* arose under maritime law, *see* 500 F.2d at 427. Their holdings might, but do not necessarily, apply to a contract case. We need not resolve these questions, however, because we hold that § 9's consent requirement does not apply to the instant case.

**3.** The consent provision is only one of several differences between § 9 and § 207. Section 9, for example, requires applications for confirmation to be filed within one year of the arbitration, while § 207 provides the parties with three years to seek confirmation. Section 9, moreover, provides that the application for confirmation should be made "to the United States court in and for the district within which such award was made," unless

the parties have specified a different court. Section 207, in contrast, allows parties to the arbitration to apply to any court having jurisdiction under Chapter 2. Though these additional differences between the sections are not at issue here, they bolster our finding of preemption by demonstrating that the Convention contemplates a significantly less restrictive approach to confirmation than the original FAA. *See also* 9 U.S.C. § 204 (providing that an action pursuant to the Convention "may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States").

which permits pre-arbitration attachment of assets in maritime disputes, conflicted with the Convention, which did not generally provide for pre-arbitration attachment. 453 F.Supp. at 863. The court found that attachment was merely "a security device in aid of the arbitration." *Id.* Because "the policy in favor of arbitration is at least as strong under the Act as under the Convention," the use of this procedural device in an action brought under the Convention furthered its goals and posed no conflict. *Id.* In the instant case, in contrast, the application of the consent-to-confirmation requirement of § 9 would *restrict* the availability of judicial confirmation, posing a direct conflict with the Convention's goal of "encourag[ing] the recognition and enforcement of commercial arbitration agreements in international contracts." *Scherk,* 417 U.S. at 520 n. 15, 94 S.Ct. 2449.

Ecoplas cites only one case directly supporting its claim that § 9 and § 207 are consistent. In *Daihatsu Motor Co., Inc. v. Terrain Vehicles, Inc.,* the district court for the Northern District of Illinois held that § 9's consent-to-confirmation requirement did not conflict with 9 U.S.C. § 207, even though the court also recognized that § 9's consent requirement constituted "an additional limitation not otherwise included in Chapter 2." No. 92-C-1589, 1992 WL 133036, at *3 (N.D.Ill. June 1, 1992), *aff'd on other grounds,* 13 F.3d 196 (7th Cir. 1993). We disagree because, in our view, the "additional limitation" noted by the district court in *Daihatsu Motor Co.* is precisely what creates the conflict with § 207.

■ Ecoplas further argues that we should refuse enforcement of Phoenix's awards on the grounds that Ecoplas was denied an opportunity to present its defense during the arbitration proceeding. Under Article V(1)(b) of the Convention, an exception to enforcement arises where "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or the arbitration proceedings or was otherwise unable to present his case." *See also* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."). Ecoplas contends that the arbitral panel refused to permit it to substantiate its main defense by denying the admission of testimony from Ecoplas's technical staff regarding the defectiveness of the "transferred know-how."

We find the Article V(1)(b) claim meritless. The record reveals that Ecoplas received an opportunity to raise the defense in question and that the arbitrator rejected it on the merits. Because the contract between Ecoplas and Phoenix required only transfer of sufficient know-how to *manufacture* Phoenix's compounds, and not to *develop* them for new applications, the arbitrator found that the testimony concerning the transfer of additional development know-how was irrelevant to whether the contract had been breached. Given the arbitrator's careful consideration of the issue, Ecoplas's claim that it was "unable to present [its] case" is groundless.[4]

---

**4.** In its reply brief, Ecoplas raises an additional defense to enforcement under Article V(1)(e) of the Convention, which provides that recognition and enforcement may be refused if "the award has not yet become binding on the parties." Convention Art. V(1)(e). Because this argument was not raised in Eco-

plas's opening brief, we decline to address it. *See Mitchell v. Fishbein,* 377 F.3d 157, 164–65 (2d Cir.2004) (noting that we "ordinarily will not consider arguments that an appellant has failed to make in his opening brief," and that "this principle is designed to promote the orderly briefing, argument, and consideration

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

of appeals"); *see also id.* at 164 ("[I]f an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it.)" (quoting *Book-*

*ing v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir.2001)); *Evangelista v. Ashcroft*, 359 F.3d 145, 155 n. 4 (2d Cir.2004).