ESTATE OF G. R. ROBINSON, DECEASED, MYRA B. ROBINSON, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 656–76.     Filed November 14, 1977.

*Edward R. Smith*, for the petitioner.
*David L. Jordan*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined an estate tax deficiency in the amount of $153,493.46 for the estate of decedent, G. R. Robinson. The parties have disposed of certain issues, and the only one remaining for decision is whether, for estate tax valuation purposes under section 2031,[1] an installment promissory note in the principal amount of $1,120,000 at the date of decedent's death should be discounted in order to reflect possible Federal income taxes that may apply in respect of subsequent installment collections.

## FINDINGS OF FACT

Decedent G. R. Robinson died testate on February 27, 1972, while a resident of Big Spring, Tex. Myra B. Robinson, decedent's wife and executrix, resided in Big Spring, Tex., on the date the petition was filed in the instant case. Petitioner filed its estate tax return with the Director, Internal Revenue Service Center, Austin, Tex.

Prior to September 1969, decedent, his mother, Ethleen Robinson, and his brother, Jack W. Robinson, owned all of the stock of D & R Oil Co. (hereinafter D & R Oil) and Robinson Drilling Co. (hereinafter Robinson Drilling). During June

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect on the date of decedent's death, unless otherwise noted.

through September 1969, negotiations took place between decendent and the Mabee Petroleum Corp. (hereinafter Mabee) for the purchase by Mabee of all the assets of D & R Oil and Robinson Drilling.

The parties to those negotiations ultimately decided that the sale of the assets of D & R Oil and Robinson Drilling should be structured in such a way as to allow decedent, his mother, and his brother to take advantage of the installment sales provisions of section 453. To this end, on November 11, 1969, decedent and his wife executed a document creating three separate irrevocable trusts for their three children. On November 14, 1969, decedent and his wife sold all of their stock in Robinson Drilling to such trusts. This stock, consisting of 70.55 shares, was acquired as community property in 1955 and 1956 and had a cost basis of $7,055.

In payment for the stock, decedent and his wife received an installment promissory note in the principal amount of $1,562,000 payable in 17 installments, the first being due and payable on or before December 31, 1969, in the amount of $162,000. The second installment was due on February 28, 1970, in the amount of $200,000. The balance was payable in 15 equal annual installments of $80,000 each, beginning February 28, 1971.

An election was properly made on decedent's and his wife's joint Federal income tax return for 1969 to report the gain on this sale under the installment method pursuant to the provisions of section 453. The taxable gain reported in 1969 was computed as follows:

| | |
|---|---|
| Selling price—note | $1,562,000 |
| Cost basis of stock | 7,055 |
| Gross profit on sale | 1,554,945 |
| Payments in year of sale | 162,000 |
| Amount taxable in 1969: | |
| Contract price—note | 1,562,000 |

Gross profit ratio:

| | | | |
|---|---|---|---|
| Gross ratio .......................... | $1,554,945 | or | 99.55% |
| Contract price ..................... | $1,562,000 | | |

Payment in year of
sale—1969 ............................................... 162,000

99.55%—taxable gain ..................................... 161,271

On February 27, 1972, the date of decedent's death, the promissory note received in exchange for the stock sold by decedent and his wife to the trusts for their children had been reduced to $1,120,000. The note bore interest at the rate of 4 percent per annum, and it was fully secured. The parties agree the value of such note should be discounted to yield 8¾ percent thus making its value as of the date of death $930,100 without taking into consideration the discount here claimed by petitioner for possible income tax payable on the subsequent installment collections. As of the date of the trial of the instant case, the executrix had not distributed decedent's right to receive a one-half community interest in the future installments under the note.

On its estate tax return, petitioner discounted the value of the estate's one-half community interest in the promissory note by the amount of $77,723 to reflect the income taxes allegedly expected to become payable by the estate on subsequent installment receipts. In his statutory notice of deficiency, respondent, in determining the value of the estate's one-half community interest, disallowed this discount.

## OPINION

Section 2031 provides that:

The value of the gross estate of the decedent shall be determined by including * * * the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

Section 20.2031–1(b), Estate Tax Regs., provides that the value of property includable in a decedent's estate is its "fair market value at the time of the decedent's death." Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."

Petitioner contends that in order to determine the fair market value of the installment note owned by decedent on the date of his death for purposes of the estate tax, one must look at the value of the note in the hands of decedent's estate (or his beneficiaries), taking into consideration the income tax payable on future installment receipts on the note, and not the value of the note under the traditional willing buyer-willing seller test contemplated by section 2031 and the regulations promulgated thereunder. Stated another way, petitioner contends that, even though the note would have sold on February 27, 1972, at a price of $930,100 between a hypothetical willing buyer and a willing seller, in the estate's hands the note was not worth $930,100 because of the income tax liability inherent in the note.

We do not agree with petitioner's contention. Section 20.2031–1(b), Estate Tax Regs., quoted in pertinent part above, is explicitly clear in providing that property, such as decedent's note, is to be valued, for estate tax purposes, under an objective approach applying the willing buyer-willing seller test. There is no support in the law or regulations for petitioner's approach which is designed to arrive at the value of the transfer as between the individual decedent and his estate or beneficiaries.

Although petitioner's theory may, at first blush, appear strong, its broad ramifications demonstate its frailty. For instance, under that approach, every determination of fair market value for estate tax purposes would require consideration of possible income tax consequences[2] as well as a myriad of other factors that are peculiar to the individual decedent, his estate, or his beneficiaries. Consideration would have to be given in a case such as the instant one, for example, as to when the estate is likely to distribute the note to the beneficiaries, and thereafter, to each beneficiary's unused capital loss carryovers, his possible tax planning to reduce future taxes on the gain included in each installment, his tax bracket both currently and in the future, his marital status, and other factors. The willing buyer-willing seller test, though it may not be perfect, provides a more reasonable standard for determining value, and it must be followed.

Under that test, the "price" at which property, in this case

---

[2]The actual amount of the income taxes payable by decedent's estate (or the beneficiaries) on the collections of the note here involved depends on many factors, as petitioner's substantiation attempts in the record clearly indicate and is, therefore, highly conjectural.

decedent's note, would change hands is the amount which could be obtained on the hypothetical sale. In the instant case, we find that the amount of $930,100 represents the price at which the note would change hands between a willing buyer and a willing seller on the date of decedent's death. We hold that petitioner is not entitled to a discount of this value (or an estate deduction) on account of the possible income tax payable on the collections of future installments on the note.

We are confirmed in this holding by the fact that Congress has focused on the problem of the income tax inherent in certain assets which are included in a decedent's gross estate and has attempted to meet that problem by granting a deduction against income tax rather than by discounting valuations for estate tax purposes or by allowing an estate tax deduction.

Section 691(a) provides that "all items of gross income in respect of a decedent * * * shall be included in the gross income, for the taxable year when received."[3] Section 691(a)(3) provides that such income in the hands of the person acquiring a right to it from decedent will be treated in the same manner as it would have been in the hands of the decedent, e.g., a capital gain as against ordinary income. Section 691(a)(4) expressly brings installment obligations within this rule. See *Hedrick v. Commissioner*, 63 T.C. 395, 401 (1974); *Stanley v. Commissioner*, 40 T.C. 851, 857 (1963), affd. 338 F.2d 434 (9th Cir. 1964).

If the statute stopped here, installment notes transmitted by a decedent at his death would be included in a decedent's estate at their fair market value under sections 2031 and 2033, and each portion of the future installment payments which represented taxable gain—in the instant case, 99.55 percent of each installment payment received by decedent represented taxable gain—would be subject to an income tax in the year of receipt. To provide relief from this double taxation, however, section 691(c)[4] provides that the recipient of income in respect of a

---

[3] The provisions of sec. 691 are complemented by sec. 1014(c) whereby property which constitutes a right to receive an item of income in respect of a decedent under sec. 691 is excepted from the general rule (in effect for decedents dying before 1977) of sec. 1014(a) which otherwise allows a stepped-up basis for property received from a decedent.

[4] Sec. 691(c) was modified and expanded in the Tax Reform Act of 1976 (P.L. 94-455, effective for decedents dying after 1976) to make the treatment more equitable. The act broadened the type of taxes that qualifies for the estate tax deduction to include State estate and inheritance taxes and the new generation-skipping taxes. The act also changed the method in which the estate tax deduction is computed.

decedent may deduct that portion of the estate tax levied on the decedent's estate which is attributable to the inclusion of the right to such income in the decedent's estate. Thus, Congress has focused on the fact that an installment obligation which includes income in respect of a decedent is subject to estate tax as part of the gross estate. To the extent the element of taxable gain included therein is also subject to the income tax, Congress has chosen to ameliorate the impact of this double taxation by allowing an income tax deduction for the estate tax attributable to the taxable gain. There is no foundation in the Code for supplementing this congressional income tax relief by the estate tax relief which petitioner here seeks.

Petitioner's reliance on *Harrison v. Comissioner,* 17 T.C. 1350 (1952), is misplaced. In that case, the taxpayer made a gift to a trust and the trust agreed to "pay and discharge * * * each year during the remaining lifetime of Settlor, her entire liability for Federal and State income taxes." *Harrison v. Commissioner,* 17 T.C. at 1354. The Court held that the taxpayer reserved a valuable and enforceable right which should be taken into account in valuing the gift. In the instant case, the estate (or the beneficiaries) has a statutory, not a contractual, duty to pay the income taxes generated by the note which passed to it from the decedent. Obviously, the *Harrison* case is inapposite. Moreover, due to the section 691 statutory scheme set out above, we think that *Harrison* cannot be applied to the estate tax valuation of an item of income in respect of a decedent.

To reflect the disposition of other issues,

*Decision will be entered under Rule 155.*