THE ESTATE OF Louis R. SMITH, Plaintiff,

v.

UNITED STATES of America, Defendants.

No. Civ.A. H–02–2046.

United States District Court, S.D. Texas, Houston Division.

Jan. 16, 2004.

E. Frank Earley, III, Richard C. Shanks, Shanks and Earley, LLP, Houston, Texas for Plaintiff.

Michelle C. Johns, United States Department of Justice, Tax Division, Dallas, Texas for Defendant.

### ORDER

HITTNER, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment (Document # 13). Having considered the motion, submissions, and applicable law, the Court determines that the motion should be granted.

### I. INTRODUCTION

Plaintiff John David Smith, Executor of the Estate of Louis R. Smith, Deceased, ("the Estate") brought the instant suit against Defendant United States of America seeking a refund of federal estate taxes. The Estate claims that it is entitled to a partial refund of federal estate taxes because it overvalued certain retirement accounts held by decedent in calculating his total gross estate and, therefore, overpaid its federal estate taxes. According to

1. This tax liability results from the fact that the retirement accounts at issue were not taxable to decedent at or before his death. As a result, the accrued income was taxable to the beneficiary of the accounts as "income in respect of a decedent." 26 U.S.C. § 691 (2002).

the Estate, the retirement accounts at issue should have been valued at a discounted amount to reflect the federal income tax liability triggered upon distribution to beneficiaries.[1] In contrast, Defendant moves for summary judgment on the sole ground that the Estate is not entitled to a federal estate tax refund and argues that the potential federal income tax liability of the beneficiaries of decedent's retirement accounts should not be considered in valuing such retirement accounts for federal estate tax purposes.

### II. FACTUAL BACKGROUND

Decedent, Louis R. Smith, died on March 7, 1997. The Estate timely filed a Federal Estate Tax Return (Form 706) reflecting an estate tax balance due in the amount of $140,358.00, which was promptly paid in full by the Estate. In its tax return, the Estate reported two retirement accounts that decedent accumulated while employed by Phillips Petroleum Company: The Phillips Petroleum Company Thrift Plan (the "Thrift Plan")[2] and the Phillips Petroleum Company Long Term Stock Plan (the "Stock Plan").[3] Both retirement accounts were comprised of marketable securities.

On October 30, 1999, the Estate timely filed for a Claim for Refund and Request for Abatement (Form 843), seeking a refund of $78,731.00 on the ground that "... the executor made an overpayment [sic] estate tax due to an error in the calculation and valuation of the gross estate of the decedent." In connection with its refund claim, the Estate filed a Supplemental Form 706, which discounted the value

2. The Estate valued the Thrift Plan at $725,550.00.

3. The Estate valued the Stock Plan at $42,808.00.

of the retirement accounts by thirty percent.[4] By letter dated July 13, 2001, the Internal Revenue Service disallowed the Estate's refund claim. Following disallowance by the Internal Revenue Service, the Estate timely filed this lawsuit seeking a refund of federal estate taxes.

### III. SUMMARY JUDGMENT STANDARD

This Court must determine whether the summary judgment record, when viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the movant bears the burden of demonstrating to the court that there is an absence of a genuine issue of any material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the party who bears the burden of proof on the claims on which summary judgment is sought to present evidence beyond the pleadings to show there is a genuine issue for trial. *Id.* A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### IV. ANALYSIS

Defendant argues that summary judgment is appropriate because the Estate's refund claim is based upon an erroneous valuation method. According to Defendant, the value of the retirement accounts at issue should not be discounted to account for the income tax liability generated upon distribution of the securities contained in the accounts.

### A. MATHEMATICAL COMPUTATION: QUESTION OF FACT

As the Estate correctly notes, the valuation of assets for estate tax purposes is generally a mixed question of law and fact. "Mathematical computation of fair market value is a factual issue; however, determination of which is the proper valuation method is a question of law." *Estate of Cook v. Comm'r*, 349 F.3d 850, 853 (5th Cir.2003); *Estate of Dunn v. Comm'r*, 301 F.3d 339, 348 (5th Cir.2002). With mixed questions of law and fact, summary judgment is appropriate where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about the facts. *Pressley v. Sanderson Farms, Inc.*, No. Civ. H–00–420, 2001 WL 850017 at *2 (S.D.Tex. April 23, 2001) (citing *Abshire v. Seacoast Prods., Inc.*, 668 F.2d 832, 835 (5th Cir. 1982)). In this case, there is no dispute as to the monetary value of the retirement accounts because the Estate's initial Estate Tax Return reflects the cash value of the Thrift Plan and Stock Plan on the date of decedent's death, and Defendant does not dispute this valuation. The sole disputed issue is whether, for estate tax purposes, the retirement accounts should be priced at their face value or whether they should be discounted to reflect the thirty percent income tax to be incurred by the beneficiaries upon distribution. Therefore, depending upon the valuation method adopted by this Court, which is a question of law, the mathematical computation of fair market value is certain.[5]

---

4. The Estate recalculated the value of each account as follows: The Thrift Plan was discounted to $507,885.00, and the Stock Plan was discounted to $29,966.00.

5. While the expert report included in Plaintiff's response to Defendant's motion raises several additional factors that could affect the value of the retirement accounts, Plaintiff

## B. *VALUATION METHOD: QUESTION OF LAW*

 Section 2031(a) of the Internal Revenue Code provides that the value of a decedent's gross estate is determined by including the value at the time of decedent's death of all of the decedent's property, real or personal, tangible or intangible, wherever situated. 26 U.S.C. § 2031 (2000).[6] Fair market value is the standard for determining the value of property for federal estate tax purposes. *United States v. Cartwright,* 411 U.S. 546, 550–51, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973). Section 20.2031–1(b) of the Estate Tax Regulations defines fair market value as, "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Treas. Reg. § 20.2031–1(b) (2004). "The buyer and seller are hypothetical, not actual persons, and each is a rational economic actor, that is, each seeks to maximize his advantage in the context of the market that exists at the date of valuation." *Estate of Jameson v. Comm'r,* 267 F.3d 366, 370 (5th Cir.2001).[7]

Applying this standard, the Estate argues that the fair market value of the retirement accounts should reflect their "inherent income tax liabilities," which consist of the thirty percent income tax that the beneficiaries would incur upon distribution. The Estate cites several recent Circuit Court and Tax Court opinions in support of its theory of valuation.[8] The Court finds these opinions inapplicable to the instant dispute. Indeed, the specific issue before the Court appears to be one of first impression.

In *Eisenberg,* the court analyzed the fair market value of shares of a closely-held corporation that owned, as its sole asset, a commercial office building. 155 F.3d at 51–52. In that case, the court determined that a hypothetical willing buyer would factor the "built in" capital gains taxes that would be incurred in the event of a sale of the office building into the purchase price of the shares. *Id.* at 56–59. Unlike the instant case, the buyer of the shares in *Eisenberg* necessarily inherits the capital gains tax liability accrued on the corporation's sole asset. 155 F.3d at 56–59. Indeed, upon sale of the stock of the corporation, a hypothetical buyer would obtain a cost basis for the stock that he purchases,[9] but the corporation's basis in its assets would not change.[10] If the corporation sold the office building, the value of each share would be reduced by the amount of capital gains taxes owed on it. *Id.*

---

failed to raise such factors or refer to any evidence supporting such factors in its response. Therefore, those portions of the expert report were not properly before the Court and must be disregarded. *See Malacara v. Garber,* 353 F.3d 393, 404–05 (5th Cir.2003).

**6.** The parties agree that the Thrift Plan and Stock Plan are properly included in Decedent's gross estate pursuant to 26 U.S.C. § 2039 (2000).

**7.** The standard applied by courts to determine fair market value is commonly referred to as the "willing buyer/willing seller test." *See Kolom v. C.I.R.,* 454 U.S. 1011, 1013, 102

S.Ct. 548, 70 L.Ed.2d 412 (1981); *United States v. Cartwright,* 411 U.S. at 551, 93 S.Ct. 1713.

**8.** *Estate of Jameson v. Comm'r,* 267 F.3d 366 (5th Cir.2001); *Estate of Eisenberg v. Comm'r,* 155 F.3d 50 (2d Cir.1998); *Estate of Davis v. Comm'r,* 110 T.C. 530, 1998 WL 345523 (1998).

**9.** *See generally* 26 U.S.C. §§ 1001–1023 (2000).

**10.** *Estate of Eisenberg,* 155 F.3d at 55; *see generally* 26 U.S.C. §§ 331–346, 1201–1297 (2000).

As explained *infra*, while the Thrift Plan and Stock Plan may generate income tax liability for the beneficiaries in this case, a hypothetical willing buyer would not take that income tax liability into consideration. *Estate of Davis* and *Estate of Jameson* stand for the same proposition as *Estate of Eisenberg* and are equally inapposite.[11]

The Estate contends that retirement accounts are more than simply a collection of the assets contained within them and that due consideration must be paid to the characteristics of the accounts themselves. Generally speaking, while there is a market for publicly-traded securities such as those contained in the Thrift Plan and Stock Plan, there is no market for retirement accounts themselves.[12] Therefore, it is not reasonable to apply the willing buyer/willing seller test to the Thrift Plan and Stock Plan in the hands of the decedent as the Estate suggests.

The Court must apply the willing buyer/willing seller test to the retirement accounts at the time of decedent's death.[13] Viewed accordingly, the accounts are equivalent to the assets contained within them. Applying the willing buyer/willing seller test, a willing buyer would pay the value of the securities as determined by applicable securities exchange rates, and a willing seller would accept the same. The potential tax to be incurred by the seller, while significant to the seller, would not affect the sales price of the securities and would not factor into negotiations between the hypothetical buyer and seller.

At first glance, this Court's opinion may appear to treat the beneficiaries of the retirement accounts rather harshly by taxing the full value of the retirement accounts for both estate and income tax purposes. However, section 691(c) of the Internal Revenue Code ameliorates the effect of this double taxation by allowing the taxpayer an offsetting income tax deduction in the amount of estate tax attributable to the particular asset. 26 U.S.C. § 691(c) (2000). In *Estate of Robinson v. Commissioner*, the Tax Court addressed the taxpayer's argument that certain installment notes be discounted for estate tax purposes to reflect income taxes due under 26 U.S.C. § 691 as follows:

> ... Congress has chosen to ameliorate the impact of this double taxation by allowing an income tax deduction for the estate tax attributable to the taxable gain. There is no foundation in the Code for supplementing this congressional income tax relief by the estate tax relief which petitioner here seeks.

69 T.C. 222, 227, 1977 WL 3712 (1977). Thus, the United States Congress has addressed and remedied any fairness concerns that may be raised by the Estate. Moreover, if the Court were to adopt the Estate's position in this case, it would upset the balance struck by Congress, giving

---

11. *See Estate of Jameson*, 267 F.3d 366 (5th Cir.2001) (applying capital gains discount to value of shares of closely-held corporation containing appreciated timberland); *see also Estate of Davis*, 110 T.C. 530, 1998 WL 345523 (1998) (applying capital gains discount to value of shares of closely-held corporation containing appreciated Winn–Dixie stock).

12. Employer-sponsored retirement accounts, such as the Thrift Plan and Stock Plan, as well as retirement accounts controlled by the individual taxpayer, such as Individual Retirement Accounts, may not be bought or sold. *See, e.g.*, 26 U.S.C. §§ 401(a)(13), 408(b)(1)-(c)(1)(2000).

13. 26 U.S.C. § 2031; *See U.S. v. Land*, 303 F.2d 170, 172 (5th Cir.1962) ("Brief as is the instant of death, the court must pinpoint its valuation at this instant—the moment of truth, when the ownership of the decedent ends and the ownership of the successors begins").

undue relief to the beneficiaries of assets taxable under 26 U.S.C. § 691.

Accordingly, the Court finds that the fair market value of the retirement accounts was properly reported by the Estate in its initial federal estate tax return.[14] This valuation reflects the value of the securities held in decedent's retirement accounts as determined by reference to applicable securities exchange rates on the date of decedent's death, but does not include a discount for the income in respect of decedent taxed to the beneficiaries of the retirement accounts. Having determined the proper valuation method to be applied to the Thrift Plan and Stock plan in this case, the Court finds that there is no genuine issue as to any material fact and Defendant is entitled to summary judgment. Given the foregoing, the Court hereby,

ORDERS that Defendant's Motion for Summary Judgment (Document # 13) is GRANTED.

---

**14.** See *supra* notes 2 and 3, at 2.