United States Court of Appeals
Fifth Circuit

**F I L E D**

November 15, 2004

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 8, 2004
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-20194
_____

JOHN DAVID SMITH, Executor of the Estate of Louis R Smith
Deceased
                    Plaintiff - Appellant

v.

UNITED STATES OF AMERICA
                    Defendant - Appellee
_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before KING, Chief Judge, and HIGGINBOTHAM and DAVIS, Circuit
Judges.

KING, Chief Judge:

     Appellant John David Smith, Executor of the Estate of Louis R.
Smith, brought suit against Defendant United States of America
seeking a refund of federal estate taxes.  The Estate claimed it
was owed a partial refund because it overvalued certain retirement
accounts held by the decedent in calculating the total gross estate
and, therefore, overpaid its federal estate taxes.  According to
the Estate, the retirement accounts should have been valued at a
discounted amount to reflect the federal income tax liability that
will be triggered when distributions are made from the retirement
accounts to the beneficiaries.  The government moved for summary

judgment, arguing that the Estate was not entitled to a federal estate tax refund because the potential income tax liability to the beneficiaries should not be considered in valuing those accounts for federal estate tax purposes. The district court granted summary judgment in favor of the government, and the Estate now appeals. For the following reasons, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Facts

The decedent, Louis R. Smith, died on March 7, 1997. John David Smith, the decedent's son, is the executor of his estate (the "Estate"). The Estate timely filed a United States Estate (and Generation-Skipping Transfer) Tax Return (Form 706) reflecting an estate tax balance due in the amount of $140,358.00, which the Estate promptly paid in full. In its tax return, the Estate reported two retirement accounts that the decedent had accumulated while employed by Phillips Petroleum Company: (1) the Phillips Petroleum Company Thrift Plan (the "Thrift Plan"), which the Estate valued at $725,550.00; and (2) the Phillips Petroleum Company Long Term Stock Plan (the "Stock Plan"), which the Estate valued at $42,808.00 (referred to collectively as the "Retirement Accounts"). The Retirement Accounts were comprised of marketable stocks and bonds.

On October 30, 1999, the Estate timely filed a Claim for

2

Refund and Request for Abatement (Form 843), seeking a refund in the amount of $78,731.00 plus accrued interest. In its claim, the Estate averred that the "refund should be allowed because the executor made an overpayment [sic] estate tax due to an error in the calculation and the valuation of the gross estate of the decedent." In addition to its refund claim, the Estate also filed a supplemental United States Estate (and Generation-Skipping Transfer) Tax Return (Form 706), which discounted the value of the Retirement Accounts by thirty percent. In an attachment to the return, the Estate explained that the thirty-percent discount reflected the amount of income taxes that would be paid by the beneficiaries upon the distribution of the assets in the Retirement Accounts. Specifically, the Thrift Plan was discounted to $507,885.00 and the Stock Plan was discounted to $29,966.00. This resulted in an estate tax liability of only $61,627.00. By letter dated July 13, 2001, the Internal Revenue Service disallowed the Estate's refund claim, stating that "[n]o discount for taxes due, now or in the future, is allowable in valuing the assets in dispute."

**B. Procedural History**

On May 29, 2002, the Estate timely filed a complaint against the United States in the United States District Court for the Southern District of Texas, seeking a refund of federal estate tax. The United States moved for summary judgment, arguing that

3

the Estate was not entitled to discount the value of the Retirement Accounts to reflect income taxes payable by the beneficiaries upon receipt of distributions from the accounts. Additionally, the United States asserted that the Retirement Accounts should be valued at their fair market value as determined by the willing buyer-willing seller standard.

The district court granted the government's motion for summary judgment. In doing so, the court specifically declined to consider any other factors that could affect the value of the Retirement Accounts as set forth in the expert report included in the Estate's response to the motion for summary judgment.[1] The court reasoned that the Estate failed to raise such factors or refer to any evidence supporting them in its response. Thus, the court concluded that the sole issue was whether, for estate tax purposes, "the retirement accounts should be priced at their face value or whether they should be discounted to reflect the thirty percent income tax to be incurred by the beneficiaries upon distribution." Estate of Smith v. United States, 300 F. Supp. 2d 474, 476 (S.D. Tex. 2004). Applying the willing buyer-willing

---

[1] The expert opinion stated, inter alia, that under the hypothetical willing buyer-willing seller test, "all relevant facts and elements of value shall be considered." In the firm's view, that included: (1) the lack of marketability; (2) the twenty-percent income tax withholding resulting from a liquidation of the Retirement Accounts; (3) the possible transferee liability that may be asserted against the purchaser of interests in the Retirement Accounts; and (4) the need for a reasonable profit in order to induce a willing buyer to enter into the transaction.

4

seller test, the court reasoned that while the Retirement Accounts may generate a tax liability for the beneficiaries in this case, a hypothetical willing buyer would not take that income liability into consideration when purchasing the underlying securities but would simply pay the value of the securities as determined by the applicable securities exchange prices. The court further stated that 26 U.S.C. § 691(c) ameliorates the double tax (the estate and income taxes) by allowing the taxpayer a deduction in the amount of the estate tax attributable to the particular asset. Accordingly, the court found that the Retirement Accounts were properly valued at their fair market value as reflected by the applicable securities exchange prices on the date of the decedent's death (not including a discount for the tax payable by the beneficiaries upon distribution from the accounts). Since there was no dispute between the parties that the Estate's initial tax return reflected the cash value of the Retirement Accounts, the court concluded that there was no material question of fact.

The Estate timely appealed to this court, arguing that the district court erred: (1) by refusing to consider evidence properly included in the summary judgment record--i.e., the additional factors that could affect the value of the Retirement Accounts as set forth in the expert opinion provided by the Estate; and (2) when valuing the Retirement Accounts, failing to apply a discount for the federal income tax liability that will

5

be triggered upon distributions from the Retirement Accounts to the beneficiaries.

## II. STANDARD OF REVIEW

This court reviews the grant of summary judgment de novo. Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373, 376 (5th Cir. 2002). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912 (5th Cir. 1992) (quoting FED. R. CIV. P. 56(c)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a genuine dispute about a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Skotak, 953 F.2d at 912 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted)). In weighing the evidence, a court must review the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## III. ANALYSIS

### A. Summary Judgment Evidence

The Estate argues that the district court improperly refused to consider certain evidence even though the Estate repeatedly made references to it. The summary judgment evidence in question

consisted of the additional factors that the expert opinion stated should be considered in valuing the Retirement Accounts: (1) the lack of marketability; and (2) the need for a reasonable profit in order to induce a willing buyer to enter into a transaction.[2]

To survive summary judgment, the nonmoving party must submit or identify evidence in the summary judgment record (such as affidavits, depositions, answers to interrogatories, or admissions on file) that designate <u>specific facts</u> showing there is a genuine issue of fact. <u>Celotex Corp.</u>, 477 U.S. at 324; <u>Malacara v. Garber</u>, 353 F.3d 393, 404 (5th Cir. 2003); <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992), <u>reh'g</u> <u>denied</u>, 961 F.2d 215 (1992). The nonmovant is also required to articulate

---

[2] The Estate also argues that the district court erred because it did not consider the expert opinion as a whole. That is an inaccurate reading of the district court's opinion, which specifically states:

> While the expert report included in Plaintiff's response to Defendant's motion raises several additional factors that could affect the value of the retirement accounts, Plaintiff failed to raise such factors or refer to any evidence supporting such factors in its response. Therefore, those <u>portions</u> of the expert report were not properly before the Court and must be disregarded.

<u>Estate of Smith</u>, 300 F. Supp. 2d at 476 n.5 (emphasis added). Combined with the fact that the district court analyzed whether the "inherent" income tax should be discounted from the value of the accounts--one of the factors in the expert opinion--it is clear the district court did not refrain from considering the opinion as a whole, but only refrained from considering those portions that the Estate did not refer to in its response. Thus, we only address the Estate's argument that the district court erred by not considering the additional factors cited in the expert opinion.

the precise manner in which the submitted or identified evidence supports his or her claim. Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Thus, this court has held that "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." Malacara, 353 F.3d at 405; accord Skotak, 953 F.2d at 915.

The additional factors were part of the summary judgment record since they were part of the expert opinion appended to the Estate's response to the government's motion for summary judgment. However, the Estate neither referred to the additional factors nor argued that the factors raised a genuine issue of material fact. Furthermore, the sort of vague and general references that the Estate made in its response were insufficient to put the portions of the opinion that discussed the additional factors properly before the district court.[3] See Forsyth v. Barr, 19 F.3d 1527, 1536-37 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994) (stating that the appellants did not identify the specific portions of the summary judgment evidence to support their claim when they "offered only vague, conclusory assertions

---

[3] The Estate's statements include: (1) using the word "factors" in its formulation of the issue; (2) arguing that the court generally takes into account factors that are limited to the characteristics of a particular asset; and (3) repeating the phrase "inherent tax liability and legal restrictions" in its response.

8

that their 'evidentiary materials'" supported their claim and raised a genuine issue of fact).  Moreover, the Estate simply failed to articulate the precise manner in which the additional factors would affect valuing the Retirement Accounts.  We therefore conclude that the district court properly refused to consider the additional factors contained in the expert opinion.

**B. Valuation Method**

The Estate also argues that the district court erred in the method it used in valuing the Retirement Accounts.  Specifically, the Estate contends that the Retirement Accounts' lack of marketability and the "inherent" income tax liability should have been factored in when valuing such accounts.  The Estate also contends that 26 U.S.C. § 691(c) does not preclude a discount for inherent tax liability when valuing the Retirement Accounts.  We address each of the Estate's arguments in turn.

1.   Lack of Marketability

The Estate's argument that the Retirement Accounts' lack of marketability should have been factored into its value fails because, as our discussion of the evidentiary issue suggests, the Estate made this argument for the first time on appeal. "Issues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice."  Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (quoting United States

9

v. Garcia-Pillado, 898 F.2d 36, 39 (5th Cir. 1990)) (internal quotation marks omitted). The Estate did not argue in the proceedings below that lack of marketability is a factor that should be considered in valuing the Retirement Accounts. More specifically, the Estate failed to mention that marketability should be a factor in discounting the Retirement Accounts in its refund claim, complaint, response to the government's motion for summary judgment, or surreply. In fact, the refund that the Estate seeks--thirty percent of the Retirement Accounts' value-- is based solely on a discount for the Retirement Accounts' "inherent tax liability" and not for its lack of marketability. Accordingly, we abstain from considering the Estate's argument since the Estate raised it for the first time on appeal.

2.   Income Tax Liability

We now turn to whether the value of the Retirement Accounts should have been discounted to reflect the potential federal income tax liability to the beneficiaries upon distribution from the accounts. Before discussing the valuation method of the Retirement Accounts, it is useful to discuss the nature of those accounts and the tax treatment they are afforded by the Internal Revenue Code with respect to the decedent and his beneficiaries.

The Retirement Accounts here were funded with tax-deferred compensation. In other words, the income used to purchase the assets in the Retirement Accounts has never been subject to income tax. Had the decedent's Retirement Accounts been

10

distributed to him during his life, he would have paid a federal income tax on the distribution.  See, e.g., 26 U.S.C. § 402(b)(2).[4]  However, the Retirement Accounts remained intact at the date of the decedent's death.  The contents of the accounts, which were not properly includible in computing the decedent's taxable income for the taxable year ending on the date of his death or for any previous taxable year, are classified under § 691(a) of the Internal Revenue Code as "income in respect of a decedent."  26 U.S.C. § 691(a)(1); 26 C.F.R. § 1.691(a)-1.  To preserve the taxability of items of income in respect of a decedent in the hands of the beneficiaries, such items are excepted by statute from the usual step-up in basis to fair market value.  26 U.S.C. § 1014(c).  Income in respect of a decedent must be included in the gross income, for the taxable year when received, of the decedent's beneficiaries.  26 U.S.C. § 691(a)(1)(B).  Thus, when the Retirement Accounts are actually distributed, the beneficiaries must pay an income tax on the proceeds.  Id.

Even though the federal income tax on the income used to

_____

[4]     Section 402(b)(2) provides in pertinent part:

        (b) Taxability of beneficiary of nonexempt trust. . . .
            (2) Distributions. The amount actually distributed or made available to any distributee by any trust described in paragraph (1) shall be taxable to the distributee, in the taxable year in which so distributed or made available . . . .

11

purchase the assets in the Retirement Accounts was thus deferred, the accounts are still considered part of the decedent's estate for federal estate tax purposes. 26 U.S.C. § 2039(a). As such, the Estate must pay an estate tax on the value of the Retirement Accounts. Id.

To summarize, then, the Retirement Accounts are subject to an estate tax, and in addition, an income tax will be assessed against the beneficiaries of the accounts when the accounts are distributed. To compensate (at least partially) for this potentially double taxation, Congress enacted § 691(c) of the Internal Revenue Code, which grants the recipient of income in respect of a decedent an income tax deduction equal to the amount of federal estate tax attributable to that asset.[5] 26 U.S.C. § 691(c). Therefore, in our scenario, the decedent's

---

[5]      Section 691(c) provides:

(c) Deduction for estate tax.
  (1) Allowance of deduction.
    (A) General rule. A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

12

beneficiaries will be allowed a deduction in the amount of federal estate tax paid on the Retirement Accounts. Finally, the deduction is allowed in the same year the income is realized-- that is, when the Retirement Accounts are actually distributed. See 26 U.S.C. § 691(c)(1)(A).

Against this backdrop, we consider the Estate's argument and apply the valuation method specified by the Internal Revenue Code. Section 2031 provides that the value of the decedent's gross estate is determined by including the value at the time of his death of all of his property. 26 U.S.C. § 2031(a). "The value of every item of property includible in a decedent's gross estate . . . is its fair market value . . . ." Treas. Reg. § 20.2031-1(b) (2004); accord Cook, 349 F.3d at 854. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts." Treas. Reg. § 20.2031-1(b); accord United States v. Cartwright, 411 U.S. 546, 551 (1973); Cook, 349 F.3d at 854. "The buyer and seller are hypothetical, not actual persons." Estate of Jameson v. Commissioner, 267 F.3d 366, 370 (5th Cir. 2001). This court has stated that "[w]hen applying the willing buyer-willing seller test . . . the '"willing seller" is not the estate itself, but is a hypothetical seller.'" Adams v. United States, 218 F.3d 383, 386 (5th Cir. 2000) (per curiam) (quoting Estate of Bonner v. United States, 84

13

F.3d 196, 198 (5th Cir. 1996)) (alterations in original).  In applying this test, the tax court has specifically refused to view the sale as one between the estate and the beneficiary. Estate of Robinson v. Commissioner, 69 T.C. 222, 225 (1977).  In Estate of Robinson, the estate asset at issue was an installment note which constituted income in respect of a decedent.  The estate argued that in order to determine the fair market value of the note for purposes of the estate tax, one must take into consideration the income tax payable by the beneficiaries as the installments mature, rather than valuing the note under the willing buyer-willing seller test.  Id.  The tax court disagreed, holding that Treas. Reg. § 20.2031-1(b) explicitly provides that property, such as the note at issue,

> is to be valued, for estate tax purposes, under an objective approach applying the willing buyer-willing seller test.  There is no support in the law or regulations for [the estate's] approach which is designed to arrive at the value of the transfer as between the individual decedent and his estate or beneficiaries.

Id.

In its brief, the Estate argues that the fair market value of the Retirement Accounts should reflect its "inherent income tax liability."  Specifically, it asserts that the value of the assets in the Retirement Accounts should have been discounted to reflect the federal income tax liability to the beneficiaries upon distribution from the accounts.  The Estate fails to acknowledge that the willing buyer-willing seller test is an

14

objective one.  Thus, the hypothetical parties are not the Estate and the beneficiaries of the Retirement Accounts.  Accordingly, we do not consider that the particular beneficiaries in this case are receiving income in respect of a decedent and will eventually pay tax on the distributions from the Retirement Accounts because doing so would alter the test from a hypothetical sale into an actual one.  Applying the test appropriately then entails looking at what a hypothetical buyer would pay for the assets in the Retirement Accounts.[6]  The Retirement Accounts consist of stocks and bonds.  A hypothetical buyer would pay the value of the securities as reflected by the applicable securities exchange prices.  A hypothetical seller would likewise sell the securities for that amount.  Correctly applying the willing buyer-willing seller test demonstrates that a hypothetical buyer would not consider the income tax liability to a beneficiary on the income in respect of a decedent since he is not the beneficiary and thus would not be paying the income tax.

The Estate's position is further eroded when one considers what income tax rate should be employed under the Estate's argument.  In this case, the Estate's position on the applicable rate is, at best, muddled.  In the Estate's refund claim, the Estate asserted that the applicable tax rate would be thirty

---

[6]     As the parties recognize, the Retirement Accounts, by their terms, cannot be sold.  For this reason, the debate here is over the value of the constituent assets.

15

percent, and it was specifically on the basis of this rate that the claimed discount was predicated.  The valuation expert's opinion included in the Estate's summary judgment evidence notes that when the Retirement Accounts are distributed, the respective payors will be obligated to withhold twenty percent of the amount of any distribution for application against any income tax liability of the beneficiary.  The opinion goes on to state that the beneficiary's income tax liability could exceed the twenty percent withheld "in almost all cases."  The valuation opinion does not, however, settle on a specific tax rate to be used for the purpose of valuing the Retirement Accounts.  At oral argument, in response to a question about how the thirty-percent discount in the refund claim was arrived at, counsel for the Estate stated (inconsistently with the Estate's refund claim) that the thirty-percent discount took into account all the factors identified in the expert's opinion, including the lack of marketability and the "inherent income tax."  The muddle in the record and at oral argument about the tax rate stems from the fact the Internal Revenue Code is devoid of a provision that would flesh out the Estate's position, putting the Estate in the position of having to make up a theory to support the amount of its claimed discount.  The theory is predicated on the fact that a beneficiary will have to pay income tax on a distribution from the Retirement Accounts, but the beneficiary's actual tax rate for some future year when the distribution is made is simply

16

unknown.  The Estate's argument is exactly the kind of beneficiary-specific inquiry, with the added feature of speculation on the future, that the hypothetical willing buyer-willing seller test precludes.

The Estate, however, contends there is a recent trend, as evidenced by several cases, of considering potential tax liability in valuation.[7]  See Dunn v. Commissioner, 301 F.3d 339 (5th Cir. 2002); Estate of Jameson, 267 F.3d at 366;  Eisenberg v. Commissioner, 155 F.3d 50 (2d Cir. 1998); Estate of Davis v. Commissioner, 110 T.C. 530 (1998).  In those cases, the estate asset at issue was stock in a closely-held corporation, and the court was faced with the question whether the capital gains tax that would be payable upon the sale of assets held by the corporation would factor into the fair market value of the corporation's stock.  See Dunn, 301 F.3d at 339; Estate of Jameson, 267 F.3d at 366;  Eisenberg, 155 F.3d at 50; Estate of Davis, 110 T.C. at 530.  As the government urges, these cases are distinguishable.  First, this case involves a different sort of asset--i.e., Retirement Accounts containing marketable stocks and bonds.  Thus, the rationale in those cases, that a hypothetical

---

[7]     This so-called "trend," as discussed in the same cases cited by the Estate, is attributable to the abrogation, by the Tax Reform Act of 1986, of the General Utilities doctrine, General Utilities & Operating Co. v. Helvering, 296 U.S. 200 (1935), dealing with corporate liquidations.  See Dunn, 301 F.3d at 339; Estate of Jameson, 267 F.3d at 366; Eisenberg, 155 F.3d at 50; Estate of Davis, 110 T.C. 530.

17

buyer would discount the price of stock in a closely-held corporation to reflect the capital gains taxes that would be payable by the buyer in the event of a subsequent liquidation of the corporation, is wholly inapplicable here.  Second, while the stock considered in the above cases would have built-in capital gains even in the hands of a hypothetical buyer, the Retirement Accounts at issue here would not constitute income in respect of a decedent in the hands of a hypothetical buyer.  Income in respect of a decedent can only be recognized by: (1) the estate; (2) the person who acquires the right to receive the income by reason of the decedent's death; or (3) the person who acquires the right to receive the income by bequest, devise, or inheritance.  26 U.S.C. § 691(a)(1).  Thus, a hypothetical buyer could not buy income in respect of a decedent, and there would be no income tax imposed on a hypothetical buyer upon the liquidation of the accounts.  Third, as we have seen, Congress has provided relief, in § 691(c), from the income tax that would be imposed on the decedent's beneficiaries in the form of a deduction for the estate taxes paid with respect to the inclusion in the gross estate of the Retirement Accounts.  In contrast, in the case of closely-held corporate stock, the capital-gains tax potential survives the transfer to an unrelated third party, and Congress has not granted any relief from the secondary tax.

We therefore conclude that the district court did not err in refusing to consider the potential federal income tax liability

18

to the beneficiaries when valuing the Retirement Accounts.  As the district court stated, Congress has addressed the Estate's concerns in § 691(c).  The courts have no business improving on Congress's efforts.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

19