**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 16-30197
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2016

Lyle W. Cayce
Clerk

DAVID J. LOIACANO,

      Plaintiff - Appellant

v.

DISA GLOBAL SOLUTIONS, INCORPORATED, doing business as Lennox
Healthcare MRO Services,

      Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-1750

Before DAVIS, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant David J. Loiacano ("Loiacano") appeals the district court's dismissal of his negligence action arising from a failed drug test administered by Defendant-Appellee DISA Global Solutions, Incorporated ("DISA"). For the reasons below, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30197

## I. BACKGROUND

Loiacano worked for Valero Refining Company ("Valero") in Norco, Louisiana. On January 6, 2014, Valero selected Loiacano for a random drug test, and an employee of DISA collected a chest hair from Loiacano for testing by Psychemedics Corporation ("Psychemedics"). Psychemedics is an independent laboratory that is separate from DISA. Psychemedics reported to DISA that Loiacano's hair tested positive for the metabolite of THC in marijuana. A medical review officer for DISA, Dr. Nsuela R. Mukana ("Dr. Mukana"), telephoned Loiacano and informed him of the test result. Dr. Mukana asked Loiacano whether he uses marijuana, to which he replied no, but she allegedly did not ask him any further questions. Valero terminated Loiacano's employment allegedly because of this failed drug test.

On August 1, 2014, Loiacano filed suit against DISA, Psychemedics, and Dr. Mukana for negligence, invoking diversity jurisdiction. Only Loiacano's claim against DISA is the subject of this appeal. On November 23, 2015, the district court granted DISA's motion for summary judgment, holding that Loiacano failed to adequately identify the duty owed by DISA to him, and that there is no genuine dispute of material fact as to causation. On February 12, 2016, the district court denied Loiacano's motion to amend summary judgment, and the district court entered final judgment dismissing Loiacano's suit.[1]

## II. STANDARD OF REVIEW

As an initial matter, we must determine whether Loiacano has appealed only the district court's grant of the motion for summary judgment or whether he has also appealed the district court's denial of the motion to amend summary judgment. The "precedents under [Federal Rule of Appellate

---

[1] The district court granted dismissals of Psychemedics and Dr. Mukana for separate reasons.

No. 16-30197

Procedure] 28," which provides the requirements of briefs, are "summarized" as follows:

> A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it. It is not enough to merely mention or allude to a legal theory. We have often stated that a party must 'press' its claims. At the very least, this means clearly identifying a theory as a proposed basis for deciding the case— merely intimating an argument is not the same as 'pressing' it. In addition, among other requirements to properly raise an argument, a party must ordinarily identify the relevant legal standards and any Fifth Circuit Cases. We look to an appellant's initial brief to determine the adequately asserted bases for relief.

*Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014); *see* Fed. R. App. P. 28.

In Loiacano's initial brief, he never requests reversal of or claims error in the denial of the motion to amend summary judgment. Notably, the statement of the issues section provides that the issue is "whether the district court erred in dismissing plaintiff's lawsuit on summary judgment," with this main issue containing three sub-issues that do not explicitly refer to the motion to amend. In the conclusion and prayer section, Loiacano "respectfully urges this Honorable Court to reverse the district court's grant of Summary Judgment in favor of defendant DISA, reverse the district court's Judgment dismissing his lawsuit, and remand for further proceedings." In the standard of review section, Loiacano states the standard of review for the district court's grant of summary judgment is *de novo*, provides summary judgment law, and concludes that "[u]nder the foregoing standards, the district court erred in dismissing plaintiff's lawsuit on summary judgment, meriting reversal and remand." In the district court, Loiacano brought his motion to amend under either Federal Rule of Civil Procedure 59 or 60, and the district court denied the motion under Rule 59. Throughout his entire initial brief, Loiacano never provides the law under these rules or the appellate standard of review

3

applicable to these rules.  Although he sometimes refers to arguments he made in the motion to amend and to reasoning in the district court's order on the motion to amend, this is to be expected when urging on appeal (as in the motion to amend) that summary judgment should be reversed.  Such references do not clearly identify the issue or constitute pressing it.  For these reasons, we conclude Loiacano has waived an appeal of the order denying the motion to amend summary judgment by not adequately briefing the issue.  Accordingly, we will only consider whether the district court erred in granting the motion for summary judgment.

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 407 (5th Cir. 2015).  "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).  "A fact issue is 'material' if its resolution could affect the outcome of the action." *Id.*  "We are not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record." *Rogers v. Bromac Title Servs.*, 755 F.3d 347, 350 (5th Cir. 2014).

"When a motion for summary judgment identifies an absence of evidence that supports a material fact on which the non-movant bears the burden of proof at trial, the non-moving party must set forth specific facts that show that there is a genuine issue for trial." *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994).  "We must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Cox v. Wal–Mart Stores E., L.P.*,

755 F.3d 231, 233 (5th Cir. 2014).  However, "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–80 (5th Cir. 2010).  Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) (alternation in original) (citation omitted).

## III.  ANALYSIS

Loiacano raises two issues on appeal.  First, Loiacano contends the district court erred in holding that DISA did not owe him a duty to investigate whether his positive test result was a false positive before reporting the result to his employer, namely, by interviewing him to determine if there was a legitimate medical explanation for the positive test result.  Second, Loiacano contends the district court erred in holding that the evidence did not create a genuine dispute of material fact as to causation.  We will assume—without deciding—that DISA owed Loiacano a duty to investigate whether his positive test result was a false positive and that Loiacano has not forfeited his arguments in regard to this issue.  Thus, we turn to the sufficiency of the causation evidence.[2]

---

[2] Loiacano also asserts that DISA is only permitted to test urine samples, not hair samples.  It is unclear whether Loiacano intends to assert this as a point of error, as he did not mention this argument in his statement of the issues and only raised it in the context of his duty-to-investigate argument.  Nonetheless, he did not raise any such argument in the district court.  Arguments not raised before the district court are forfeited.  *In re Deepwater Horizon*, 814 F.3d 748, 752 (5th Cir. 2016).  Accordingly, to the extent Loiacano appeals on

No. 16-30197

Under Louisiana negligence law, which we apply in this diversity case, the plaintiff has the burden to prove, inter alia, that "the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element)" and that "the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element)." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006)). In its motion for summary judgment, DISA contended Loiacano had no evidence of causation.  In response, Loiacano provided and referenced only two pieces of evidence: the medical records of Dr. Fred DeFrancesh, and the expert declaration of Dr. Edward G. Brown ("Dr. Brown").  The entirety of Dr. Brown's declaration on this issue is as follows:

> Versed is a drug that is used as a sedative in the medical profession.  Based upon the documents (attached hereto) that I have seen from [Loiacano's attorney], I have determined that [Loiacano] was administered Versed as part of a protocol to determine if he had a problem with his joints or not.
>
> Versed is a chemical that can be hydrolyzed to give a hydrolysis product that has a mass of 344 amu.  This is the same mass as is found for the THC metabolite that is the basis of a positive test for THC when tested by GCMS.  Therefore, it is possible that this metabolite of Versed is the actual compound that was incorporated into the hair sample that was tested for the presence of the THC metabolite from marijuana use and that no THC metabolite was present in the hair sample.  The false-positive would have been produced from the presence of the hydrolysis product from Versed in the hair that was tested.  The false-positive would have shown that a chemical with a mass of 344 amu was present; but the detected mass from the GCMS test would have been from the Versed hydrolysis product and not from a THC metabolite.

---

the basis of a hair test being unpermitted, this issue is forfeited, and we will not reverse on this basis.

Thus, Loiacano's argument that DISA's breach of its duty to investigate caused his termination is dependent on at least three premises: had DISA investigated the positive test result, DISA would have discovered that Loiacano had ingested Versed; the hair collected from Loiacano contained Versed; and Versed was mistaken for THC.

The medical records report that Loiacano was administered Versed intravenously on May 31, 2013, prior to a medical procedure. Therefore, we will assume DISA would have discovered this fact had it investigated.

However, there is insufficient evidence to create a genuine dispute that the hair (collected January 6, 2014) contained Versed (ingested May 31, 2013). Although Dr. Brown's declaration seems to be based on the assumption that the hair contained Versed because of prior ingestion, Dr. Brown does not specifically claim the hair contained Versed. Nor does Dr. Brown provide any explanation as to how or why the hair could have contained Versed. Loiacano ingested Versed seven months prior to the hair collection. One of DISA's experts opines—with explanation—that the test results demonstrate that Loiacano used marijuana on multiple occasions during the period from the end of May 2013 to the end of December 2013. However, this expert's opinion about the length of time does not address Versed, is limited to marijuana only, and is never extrapolated to other drugs. There is no evidentiary basis presented for assuming that the hair could have contained Versed ingested seven months prior just because the hair contained marijuana ingested seven months prior.[3]

Even if there is evidence that the hair contained Versed, there is insufficient evidence to create a genuine dispute that Versed was mistaken for

---

[3] Loiacano claims the medical records show that Versed was administered to him on December 23, 2013, as well. The medical record from that date does not mention Versed. Even if it did, there is also insufficient evidence that the hair could have contained Versed ingested on December 23, 2013.

the metabolite of THC in marijuana. The district court concluded a reasonable jury could not find for Loiacano based on Dr. Brown's declaration—and thus there was no genuine dispute concerning whether Versed could cause a false positive—because Dr. Brown's opinion was speculative, was conclusory, and lacked a reasonable basis. We agree. "[T]here is a level of conclusoriness below which an affidavit must not sink if it is to provide the basis for a genuine issue of material fact." *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 (5th Cir. 1991). "[U]nsupported . . . [expert] affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Id.* at 225 (omission in original) (citation omitted). In other words, "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so'" does not suffice to preclude summary judgment. *Id.* (citation omitted). "Testimony based on conjecture or speculation is insufficient," and "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513–15 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). Thus, we have repeatedly held that a "single conclusory expert affidavit, devoid of any factual support or explanation of the expert's basis" for his or her conclusion, is "insufficient to meet [a] [p]laintiff['s] burden of 'designat[ing] specific facts showing that there is a genuine issue for trial.'" *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) (last alteration in original); *Crayton v. Amadeo Rossi, S.A.*, 384 F. App'x 330, 331–33 (5th Cir. 2010); *see also In re Segerstrom*, 247 F.3d 218, 227 (5th Cir. 2001); *Shaboon v. Duncan*, 252 F.3d 722, 736 (5th Cir. 2001).

In summary, Dr. Brown opines it is "possible" that Versed was mistaken for the THC metabolite or Versed "would have" been mistaken for the THC metabolite "when tested by GCMS" because "hydrolyzed" Versed and the THC

metabolite have the "same mass." Dr. Brown does not explain whether or how the Versed that Loiacano ingested hydrolyzed. Dr. Brown seems to assume the Versed hydrolyzed, and then entirely relies on the similar mass of hydrolyzed Versed and the THC metabolite to support his conclusion. In doing so, he implies the THC metabolite is identified in a GCMS test by mass; however, he does not clearly explain whether the THC metabolite is identified by mass, or more importantly, whether mass is the *only* identifier. In contrast, one of DISA's experts opines that "Dr. Brown's testimony concerning the mass or weight is scientifically incoherent," that "the mass of a Versed metabolite is irrelevant to the **presence** of the carboxy-THC metabolite found," and that "[t]he weight of one metabolite does not mean that it could manifest as a different metabolite." Further, Dr. Brown only refers to a GCMS test. DISA's three experts explained that three separate tests were performed on different portions of Loiacano's hair, all of which reported positive for the presence of the THC metabolite above an established limit: first a screening test via enzyme immunoassay technology (EIA), followed by two confirmatory tests via a mass spectrometry technique (GC/MS/MS). Dr. Brown does not deny the occurrence of the immunoassay test, but he does not address it. Therefore, Loiacano has not offered any evidence that the immunoassay test was a false positive. As to the GCMS tests, Dr. Brown states it is "possible" that Versed was mistaken for the THC metabolite or Versed "would have" been mistaken for the THC metabolite. These statements are tentative. In contrast, all three of DISA's experts opined or concurred that the presence of the THC metabolite can only have been caused by the ingestion of marijuana. Similarly, one of these experts also opined that, "definitely and within reasonable medical probability[,] a specimen that tests non-negative for the presence of marijuana cannot be the result of the donor's use of drugs other than marijuana." For all these reasons, Dr. Brown's declaration sets forth conclusions that are devoid

of any factual support or explanation beyond mere speculation. Accordingly, neither Dr. Brown's declaration, nor the fact Loiacano ingested Versed, creates a genuine dispute that a breach of a duty to investigate caused Loiacano's termination.

Additionally, Loiacano contends the district court erred by not considering the following evidence: the fact that he received two steroid injections on May 31, 2013, and December 23, 2013, as reported in the medical records of Dr. Fred DeFrancesh; the negative results of two drug tests he obtained from other laboratories after he received the results of DISA's test; his employment record; his deposition testimony wherein he states he did not use marijuana but was taking multiple over-the-counter and prescription medications, including Motrin; and a published study about the rate of incidence of false positives in marijuana testing and about the possibility that certain drugs, including Motrin, cause a false positive. Of this evidence, the only one Loiacano referenced in his response to the motion for summary judgment was the steroid injections. However, Loiacano never explained how the steroids related to his causation argument or claimed the steroids were mistaken for the THC metabolite—nor does he provide any such explanation or claim on appeal. The remainder of the evidence was not mentioned in his response to the motion for summary judgment. Not only was the published study not mentioned, it does not appear to be in the record. Because Loiacano failed to refer to this evidence in his response to the motion for summary judgment, the evidence was not properly before the district court. *See Smith*, 391 F.3d at 625. The district court did not have a duty to sift through the record in search of evidence to support Loiacano's case. *See Jackson*, 602 F.3d at 378–80. Therefore, the district court did not err in not considering this evidence.

No. 16-30197

## IV.  CONCLUSION

For the foregoing reasons, there is no genuine dispute as to the causation element of Loiacano's negligence claim.  Accordingly, the district court did not err in granting summary judgment in favor of DISA.  AFFIRMED.